**GREENLON, INC. OF CINCINNATI,**
Plaintiff,

v.

**GREENLAWN, INC., Defendant.**

No. C-1-82-16.

United States District Court,
S. D. Ohio, W. D.

July 7, 1982.

Marc D. Mezibov, Cincinnati, Ohio, for plaintiff.

Mark A. Vander Laan, Cincinnati, Ohio, C. David Redmon, Charles G. Middleton, III, Louisville, Ky., for defendant.

SPIEGEL, District Judge:

This is a suit for a service mark infringement under the Lanham Act, 15 U.S.C. §§ 1051 *et seq.*, and for unfair competition under 15 U.S.C. § 1125(a), with state claims of deceptive trade practices under Ohio Revised Code § 4165.02 and service mark infringement under Ohio common law, by plaintiff, Greenlon, Inc. of Cincinnati (Greenlon). Defendant, Greenlawn, Inc., has counterclaimed for service mark infringement pursuant to the Lanham Act, 15 U.S.C. § 1051 *et seq.*, for unfair competition and false representation under 15 U.S.C.

§ 1125(a), and for deceptive trade practices in violation of KRS 365 and KRS 367.110–300.

This case is before the Court on cross-motions for summary judgment. Plaintiff has moved for summary judgment on its fifth and sixth affirmative defenses. These are, respectively, that defendant has abandoned its mark, and that the assignment of the mark through which defendant asserts its title and interest is an invalid assignment in gross (doc. 33). Defendant filed a reply memorandum (doc. 40), to which plaintiff responded (doc. 42). Defendant also filed a motion for partial summary judgment for recognition in it of a superior right to use its mark (doc. 35), to which plaintiff filed a memorandum in opposition (doc. 41). These motions came on for hearing on June 21, 1982, supported by depositions and accompanying documentary exhibits.

Plaintiff, Greenlon, is an Ohio corporation engaged in the lawn care service business, operating in the Greater Cincinnati Metropolitan Area, which includes a portion of Northern Kentucky. The name Greenlon was first used by Silver Oil Company in the Spring of 1972. Mr. William J. Kopp, the owner of Silver Oil Company, decided to begin operating in the lawn care business under the name "Greenlawn." He contacted an attorney in early 1972 about registering that service mark. He was informed that the name "Greenlawn" was already registered with the United States Patent Office, as was the name "Green Lawns" in combination with a growing grass logo. Mr. Kopp also received a letter from Mr. James McCurdy in the Spring of 1972, which informed him that Mr. McCurdy was the owner of the federally registered mark "Green Lawns." On the basis of this information, Mr. Kopp decided to use the name Greenlon because, although it was phonetically the same as Green Lawn and carried the same connotation, it had a different spelling. Mr. Kopp expressed his opinion that use of the name Greenlon would not cause any confusion because he used a smiling sun and truck logo in connection with his name, while Mr. McCurdy's mark included a growing grass logo.

In early 1974, Kopp and Mr. Richard D. Steinau entered into an agreement for the sale of Silver Oil's Greenlon Division, by which they set up a joint venture called Greenlon International. Greenlon International acquired all of Silver Oil's Greenlon Division assets. Greenlon International also sold Greenlon, Inc., to Steinau as a franchise on February 22, 1974. The franchise was given the full rights by Greenlon International to use the Greenlon name and logo in business in the Greater Cincinnati Area, which includes a portion of Northern Kentucky. Mr. Steinau began to create a customer list in early 1973, and began operating in 1974. Mr. Steinau operated then, and operates now, only in the Greater Cincinnati Area. His business was the sole franchisee of Greenlon International, and the only portion of Greenlon International which engaged in lawn care service operations.

On April 30, 1974, Greenlon International set up a division called Greenlon Management and Supply (GMS), which was to be used to supply the chemicals connected with the lawn care business to Cincinnati and any other franchise areas which may develop. GMS registered the name "Greenlon" without any logo with the United States Patent Office on March 16, 1976, in connection with the lawn care service business and holds Registration No. 1,035,913. As part of its application for federal registration, Greenlon made a sworn statement that no other person, firm, or corporation had the right to use that mark in commerce, and that the mark "Greenlon" was not likely to cause confusion or mistake or to deceive.

In November 1981, Kopp exchanged his interest in Greenlon International for Steinau's interest in GMS. At that time, GMS recorded an assignment of the federally registered mark "Greenlon," together with the goodwill associated with the business, to Greenlon, Inc. of Cincinnati. Steinau has continued to operate the lawn care service business in the Greater Cincinnati Area under the name Greenlon.

Greenlawn, Inc., is owned by Timothy M. Shallcross, Sr., and his son, Timothy, Jr. That company was incorporated on December 29, 1971, for the purpose of providing law care service. At that time, Mr. Shallcross only investigated in the State of Kentucky to see if the name was being used. Greenlawn commenced operations in the Metropolitan Louisville Area, which included a portion of Southern Indiana. Greenlawn subsequently expanded to include Lexington, Kentucky, and areas in Tennessee, Mississippi, Alabama, Oklahoma, Louisiana, and Kansas. All of these operations were run by the Shallcross's under the name of Greenlawn or Green-Lawn.

Shallcross was made aware that the name Greenlawn was the subject of a federally registered mark when he received a letter from Mr. James McCurdy of Belleville, Illinois, in 1975 or 1976. Shallcross heard from McCurdy again in September 1981, shortly after he had decided to expand Greenlawn into the Cincinnati, Ohio area. Mr. Shallcross leased a building in Cincinnati for this purpose on September 21, 1981. At that time, he was aware of Greenlon of Cincinnati's existence.

Mr. Shallcross responded to McCurdy's 1981 letter, and the two men began negotiations concerning the use of the Greenlawn name. In December of 1981, they entered into a "Trademark Agreement and License" (Agreement). Under the terms of the Agreement, Shallcross paid McCurdy $15,000 for the assignment of McCurdy's federally registered mark, together with the goodwill symbolized by the mark, except in those areas where McCurdy was doing business. The agreement gave McCurdy a royalty-free license to continue to use the mark in the areas in which he had previously been operating, and stated that his use of the license was to be under business arrangements and standards approved by Greenlawn, but further stating that the arrangements and standards being used by McCurdy were expressly adopted and controlled.

McCurdy had begun his lawn care business in 1970 in the Belleville, Illinois area, and had expanded it no further than St. Louis, Missouri, approximately twenty-four miles away. McCurdy filed for federal registration of the name Green Lawns on April 22, 1970, and his application was initially rejected on the basis of possible confusion with the prior-registered mark of Greenlawn, which belonged to a New York fertilizer cooperative. McCurdy, however, successfully argued that the name Green Lawns, in combination with a growing grass logo, would not cause confusion, especially in view of the different services provided by the two companies using the name. He received a registration for the combination service mark Green Lawns, Inc., bearing Principal Register No. 910,759, on March 30, 1971. McCurdy has provided lawn care services under this mark continuously since April of 1970. After December of 1981, McCurdy continued using the mark in connection with his business under the license granted to him by the agreement entered into with Shallcross.

Plaintiff first contacted defendant in November of 1981, and informed it that Greenlon was a federally registered mark, and that defendant would be infringing the mark if it expanded its operations into the Cincinnati area under the name Greenlawn. When defendant continued to prepare to enter the market here under the name Greenlawn, plaintiff filed the instant lawsuit against defendant in January 1982, and obtained an order preliminarily restraining defendant from using the name Greenlawn or any derivative of that name in the Greater Cincinnati Area. Defendant then commenced operations in this area under the name Superior Lawn Care during the pendency of this lawsuit. Defendant has never used the registered mark Green Lawns in combination with the growing grass logo.

After reviewing all of the evidence submitted by the parties in support of their respective motions for summary judgment and considering the memoranda and arguments of counsel, the Court has determined that the primary issue for consideration is the validity of the assignment of the Green Lawns mark by McCurdy to defendant.

Section 10 of the Lanham Act deals with assignments of trademarks as follows:

A registered mark or a mark for which application to register has been filed shall be assignable with the good will of the business in which the mark is used, or with that part of the business connected with the use of and symbolized by the mark, ... 15 U.S.C. § 1060.

Plaintiff contends that since McCurdy kept his entire business under the agreement between McCurdy and defendant, as well as the goodwill connected with that business, he assigned nothing to the defendant but the right to use the mark in areas of the country in which McCurdy was not already using it. Plaintiff asserts that such an assignment is a naked assignment or an assignment "in gross," and is invalid to transfer any legal rights under the mark to defendant.

The law is clear that a trademark assignment must carry with it the assignment of goodwill which the trademark symbolizes in order to transfer title in the mark. 15 U.S.C. § 1060. An assignment without goodwill, known as an assignment "in gross," does not transfer any legal rights to the assignee. *Bourjois & Co. v. Katzel*, 260 U.S. 689, 43 S.Ct. 244, 67 L.Ed. 464 (1923); *Dresser Industries, Inc. v. Heraeus Engelhard Vacuum, Inc.*, 395 F.2d 457 (3d Cir.) *cert. denied*, 393 U.S. 934, 89 S.Ct. 293, 21 L.Ed.2d 270 (1968). This common law rule was codified by Section 10 of the Lanham Act, 15 U.S.C. § 1060. *Mr. Donut of America, Inc. v. Mr. Donut, Inc.*, 418 F.2d 838 (9th Cir. 1969).

The requirement that an assignment of a mark must be accompanied by a transfer of goodwill is derived from two sources: (1) the fundamental nature of a trademark which is not a property right but only a right appurtenant to an established business or trade in connection with which the mark is employed, *United Drug Co. v. Rectanus*, 248 U.S. 90, 97, 39 S.Ct. 48, 50, 63 L.Ed. 141 (1918); and, (2) the protection of the consuming public against confusion or deception. *Syntex Laboratories, Inc. v. Norwich Pharmacal Co.*, 315 F.Supp. 45

(S.D.N.Y.1970), *affirmed*, 437 F.2d 566 (2d Cir. 1971); *PepsiCo, Inc. v. Grapette Co., Inc.*, 416 F.2d 285 (8th Cir. 1969).

In the instant case, under the agreement between McCurdy and defendant, McCurdy transferred the right to the service mark Green Lawns "along with the goodwill symbolized by the mark; except that for the territory hereinafter licensed, the said good will shall, by and subject to this Agreement, hereafter be and remain the goodwill of [McCurdy]" (Plaintiff's Ex. No. 6, p. 2). The licensed territory in which McCurdy was to retain his goodwill, the State of Illinois, except for the Chicago Metropolitan Area, the State of Missouri, and that part of the State of Kansas which constitutes the Metropolitan Area of Kansas City, Missouri, was the only territory in which McCurdy had ever engaged in providing lawn care services. None of McCurdy's tangible assets were transferred to defendant under this agreement, and McCurdy retained all of the assets of his lawn care business, which he continued to operate just as he had before the agreement was consummated.

As Mr. McCurdy stated in his deposition:

Question: Can you give me your best understanding of the nature of that agreement, what it means to you, what you were selling or—

Answer: I sold him the trademark to use it any way he wants to use it, except in the State of Illinois, with the exception of Metropolitan Chicago, the State of Missouri, and that part of Kansas which is considered Metropolitan Kansas City. I use it in those two states.

Question: So you retained the right to use the trademark and logo in the areas in which you had been doing business for the last ten years?

Answer: In the states, yes.

Question: States and more particularly the particular areas in those states would be included?

Answer: Any area in the states would be included.

Question: So you gave up nothing—strike that. You retained all business interests that you had up to the point of that agreement, is that correct?

Answer: Yes, that's right.

Question: All the goodwill that you had established in this area you've retained by virtue of the logo?

Answer: Yes.

Question: Were any physical assets of your company or business sold as part of this agreement?

Answer: No.

Question: Did you relinquish any part of your business to the company in Kentucky?

Answer: No.

Question: And they have no proprietary interest in your business per se?

Answer: That's correct.

Question: And they participate in no way in your business, is that correct?

Answer: That's correct.

Question: And for that matter you couldn't participate in their business?

Answer: Correct.

(McCurdy deposition, pages 38–41).

Thus, it appears that under the terms of the agreement between McCurdy and defendant, defendant received nothing more than the right to use plaintiff's nationally registered mark in areas of the country in which plaintiff was not already doing business. No physical assets of McCurdy's were transferred, and McCurdy explicitly retained the goodwill associated with his business. Defendant received no technical information or know-how relating to the lawn care business from McCurdy. In fact, defendant received nothing of value from McCurdy other than McCurdy's permission to use the mark.

Although defendant argues that it received McCurdy's goodwill in the Metropolitan Chicago Area, there is no evidence that McCurdy ever operated or advertised there or that consumers in that area were aware of his lawn care business. Defendant also argues that McCurdy built up some national goodwill by giving lawn care seminars to other businessmen from all areas of the country as to how such a business is best run. Again, however, there is no evidence that McCurdy's reputation as a provider of lawn care services to consumers, the business for which defendant wishes to use the mark, was promoted in any way by this activity. Finally, defendant argues that it is not necessary that tangible assets be transferred in order for the assignment of the mark to be valid.

The Court finds that cases have held, as defendant asserts, that a valid transfer of a trademark or service mark can be effected even though minimal or no tangible assets of the business are transferred with the mark. *Glamorene Products Corp. v. Procter & Gamble Co.*, 538 F.2d 894 (CCPA 1976); *Sterling Brewers, Inc. v. Schenley Industries, Inc.*, 441 F.2d 675 (CCPA 1971); *Syntex Laboratories, Inc. v. Norwich Pharmacal Co.*, 315 F.Supp. 45 (S.D.N.Y.1970), *affirmed*, 437 F.2d 566 (2d Cir. 1971); *Hy-Cross Hatchery, Inc. v. Osborne*, 303 F.2d 947 (CCPA 1962); *cf. PepsiCo, Inc. v. Grapette Co.*, 416 F.2d 285 (8th Cir. 1969). A few of these cases have gone one step further and found a valid assignment where no tangible assets of the business were transferred and the assignor retained some of the physical assets of the business previously associated with the mark. *Glamorene Products Corp. v. Procter & Gamble Co., supra; Syntex Laboratories, Inc. v. Norwich Pharmacal Co., supra; Hy-Cross Hatchery, Inc. v. Osborne, supra.* In none of these cases, however, did the assignor continue to conduct that part of his business previously associated with the mark after the transfer of the mark to his assignee.

In *Glamorene*, the assignor retained a small, residual inventory which it sold after the assignment to eliminate warehouse stock. It gave up a growing dry cleaning business which had substantial goodwill associated with it when it assigned the mark BOUNCE to the assignee. 538 F.2d at 895. In *Syntex*, the assignor and the assignee dealt in the manufacture and sale of identical products. Under the assignment agree-

ment, the assignor retained the right to continue to manufacture the product until 120 days prior to the date of market introduction of the product by the assignee, and the right to continue selling the product up to that date. After that time, the assignor ceased all activity under the trade name. 315 F.Supp. at 55. In *Hy-Cross*, both assignor and assignee remained in the business of breeding and selling poultry. Although no tangible business was transferred, the assignee gave up the right to sell chickens under the assigned trade name, which had been a part of his business. 303 F.2d at 950.

Thus, all of the cases defendant cites in support of its argument that the assignment was valid are distinguishable. Although no tangible assets must be transferred to the assignee to validate the assignment of a mark, some part of the business, in these cases the relinquishment of the right to do business under the mark in favor of the assignee, must be transferred in order that the Lanham Act requirement of a transfer of goodwill with the mark be met. 15 U.S.C. § 1060.

In the instant case, defendant received no part of his assignor's business, the assignor having retained his business and all tangible and intangible assets appurtenant thereto, including the right to do business under the mark and all the goodwill he had built up associated with the mark. This Court is reluctant to extend the requirement of a transfer of goodwill to encompass such a situation, where in fact no transfer of any asset occurred since the assignor relinquished nothing. *See Pepsi-Co, Inc. v. Grapette Co.*, 416 F.2d at 287. The Court finds that the attempted assignment of the mark Green Lawn by McCurdy to defendant was a naked assignment, or an assignment in gross, and was invalid to transfer to defendant any rights under the mark.

Plaintiff, on the other hand, has obtained federal registration of its mark "Greenlon." Such registration is *prima facie* evidence of plaintiff's exclusive right to use the mark in connection with the lawn care service, unless defendant, in the course of this lawsuit, is able to establish a legal or equitable defense or defect in the mark, or, to the extent to which plaintiff's right to use the mark has achieved incontestable status, one of the defenses or defects enumerated in 15 U.S.C. § 1115(b). The Court finds that this case presently is not in a posture for determination of defendant's counterclaim of fraud, nor is it ripe for determination of the validity of plaintiff's right to use the mark "Greenlon" as against McCurdy's right to use his mark "Green Lawns."

However, on the basis of its finding that the assignment of the mark from McCurdy to defendant was an assignment in gross and invalid to transfer to defendant any legal rights under the mark, the Court denies defendant's motion for summary judgment and finds that defendant does not have a superior right under that assignment to use the mark Greenlawn in the Cincinnati area. Likewise, this determination compels the Court to grant summary judgment on plaintiff's sixth affirmative defense, that the assignment was indeed in gross. Since defendant has no right under McCurdy's federally registered mark, and McCurdy is not a party to this lawsuit, the Court sees no necessity to consider the issue of whether McCurdy's actions may have resulted in abandonment of the mark.

Accordingly, summary judgment is granted in favor of the plaintiff and against defendant on plaintiff's sixth affirmative defense. Correspondingly, judgment is granted against defendant and in plaintiff's favor on defendant's motion for partial summary judgment.

SO ORDERED.