**TANDY CORPORATION,**
**Plaintiff-Appellant,**

v.

**MALONE & HYDE, INC.,**
**Defendant-Appellee.**

No. 84–5277.

United States Court of Appeals,
Sixth Circuit.

Argued April 9, 1985.
Decided July 31, 1985.

I.C. Waddey, Jr., Waddey & Newport, and Daniel C. Kaufman, argued, Nashville, Tenn., for plaintiff-appellant.

D.L. Lansden, argued, Dennis J. Meaker, Walter H. Crouch, Michael E. Moore, Waller, Lansden, Dortch & Davis, Nashville, Tenn., Alan S. Cooper, Banner, Birch, McKie & Beckett, and Stephanie K. Wade, Washington, D.C., for defendant-appellee.

Before MERRITT and CONTIE, Circuit Judges, and KINNEARY,[*] District Judge.

MERRITT, Circuit Judge.

In this trademark infringement appeal concerning the legal standards applicable to the equitable defense of laches, plaintiff Tandy claims that defendant Malone and Hyde's use of the trademark "AUTO SHACK" infringes Tandy's marks "RADIO SHACK," "THE SHACK," and "SHACK." The District Court granted Malone and Hyde's summary judgment motion on the basis of laches without reaching the merits and barred both injunctive and monetary relief. The District Court barred on grounds of unreasonable delay plaintiff's action brought 32 months after it arose. The Court gave no deference or presumptive effect to the three-year statute of limitations which would be applicable if the action were characterized as one at law instead of in equity. Because the Court erred in failing to give presumptive effect to the three-year legal limitations period, we reverse and remand for further proceedings.

**I.**

In 1977, defendant Malone and Hyde, a wholesale and retail grocer, considered going into the retail auto parts business through acquisition of an existing chain of stores. Defendant negotiated with Mr. Scavariel, owner of several stores in Phoenix, Arizona, operating under the name "Auto Shack, Inc." After unsuccessful acquisition negotiations, defendant decided to enter the auto parts business by starting a new operation. Scavariel helped defendant in this process by providing information on supplier networks, marketing techniques, inventory design, and management. Scavariel then gave defendant permission to

---

[*] The Honorable Joseph P. Kinneary, Judge, United States District Court for the Southern District of Ohio, sitting by designation.

use the name AUTO SHACK in areas outside Arizona.

Malone and Hyde opened its first AUTO SHACK store in July 1979. By August it had opened five AUTO SHACK stores and had spent approximately $25,000 in promoting the name. By March 1982 it had opened 55 AUTO SHACK stores and had spent approximately $1.5 million promoting the name.

Plaintiff learned of defendant's use of the AUTO SHACK mark in July 1979 when defendant opened its first store. From that point Tandy began to document instances of public confusion. In March 1982 Tandy notified Malone and Hyde of its objections to the mark AUTO SHACK. Tandy filed suit against Malone and Hyde in April 1982.

The District Court held that Tandy's 32-month delay in notifying Malone and Hyde of its objections to the AUTO SHACK mark was "inexcusable and unreasonable," and that the delay had substantially prejudiced Malone and Hyde. 581 F.Supp. 1124 at 1128. The District Court therefore granted summary judgment on the basis of laches. The Court then analyzed whether laches should bar injunctive as well as monetary relief and determined that "the interests and equities of the parties and the public" required a denial of all relief. 581 F.Supp. at 1131. The District Court's opinion does not refer to the three-year Tennessee statute for tortious injury to property, Tenn.Code Ann. § 28–3–105 (1980), which the parties appear to agree is the applicable state limitation statute.

The District Court, in applying the doctrine of laches, erred in failing to give the appropriate presumptive effect to Tennessee's three-year limitations period. A brief review of the equitable doctrine of laches and the common law history of trademark litigation is helpful in order to put the issue before us in perspective.

## II.

The substantive and remedial doctrines of trademark law draw upon legal principles developed both at law and in equity.

Although trademark litigation began as early as the 1600's, the law of trademarks did not undergo significant development until the nineteenth century, when the increasing use of trademarks to symbolize and market products created the need for defining and protecting owners' rights. *See* F. Schechter, *The Historical Foundations of the Law Relating to Trademarks* 122–45 (1925).

Both equity and law courts decided trademark cases in England during the early stages of trademark development, but equitable principles seem to have dominated that process because injunctive relief was generally considered the first and most effective step for courts to take in redressing a trademark infringement. *Id.* American courts also stressed equitable relief and principles in their responses to trademark disputes. *See, e.g., Hanover Star Milling Co. v. Allen & Wheeler Co.,* 208 F. 513, 516 (7th Cir.1913). Thus, prior to statutory protection for trademarks, courts determined rights and liabilities primarily on the basis of equitable theory. They treated the damages portion of such suits as an equitable action in the nature of an accounting. Consistent with this history of trademark law, § 34 of the Lanham Act of 1946 allows for injunctive relief "according to the principles of equity," 15 U.S.C. § 1116 (1982), and § 35 allows monetary relief "subject to the principles of equity," *id.,* § 1117.

Despite this pervasive equity background, the damages or accounting aspect of trademark infringement actions are considered legal actions for purposes of the jury trial clause of the Seventh Amendment. In *Dairy Queen v. Wood,* 369 U.S. 469, 82 S.Ct. 894, 8 L.Ed.2d 44 (1962), the Supreme Court held that a litigant has a right to a jury trial in an infringement action for money damages on the theory that "an adequate remedy at law" is available. 369 U.S. at 478, 82 S.Ct. at 900. Thus infringement actions are hybrids, a mixture of law and equity.

The Lanham Act does not contain a statute of limitations. In determining when a plaintiff's suit should be barred under the Act, courts have consistently used principles of laches as developed by courts of equity. *See, e.g., Saratoga Vichy Spring Co., Inc. v. Lehman,* 625 F.2d 1037, 1040 (2d Cir.1980); *Polaroid Corp. v. Polaroid Electronics Corp.,* 287 F.2d 492 (2d Cir.), *cert. denied,* 368 U.S. 820, 82 S.Ct. 36, 7 L.Ed.2d 25 (1961).

■ Under equitable principles the statute of limitations applicable to analogous actions at law is used to create a "presumption of laches." This principle "presumes" that an action is barred if not brought within the period of the statute of limitations and is alive if brought within the period. *See* Note, *Developments in the Law—Statutes of Limitations,* 64 HARV.L. REV. 1177, 1184 (1950). *See also DeSilvio v. Prudential Lines, Inc.,* 701 F.2d 13 (2d Cir.1983) (a determination of laches in admiralty must include reference to the analogous statute of limitations); *Goodman v. McDonnell Douglas Corp.,* 606 F.2d 800 (8th Cir.1979), *cert. denied* 446 U.S. 913, 100 S.Ct. 1844, 64 L.Ed.2d 267 (1980) (analogous statute of limitations is "important consideration" in action under Veterans' Reemployment Rights Act). *See also Reconstruction Finance Corp. v. Harrisons & Crosfield,* 204 F.2d 366, 370 (2d Cir.), *cert. denied* 346 U.S. 854, 74 S.Ct. 69, 98 L.Ed. 368 (1953) (petition for order permanently enjoining defendant from arbitrating a claim against plaintiff); *Shell v. Strong,* 151 F.2d 909 (10th Cir.1945) (action for specific performance of a contract). We have recently followed this so-called "presumption" or general principle on a similar issue in the patent context. *See TWM Manufacturing Co. v. Dura Co.,* 592 F.2d 346, 348 (6th Cir.1979) (applicable legal limitations period is the normal period to be used for laches).

The general principle outlined in *TWM* and other laches cases provides that, in the absence of unusual circumstances, a suit will not be barred before the analogous statute has run but will be barred after the statutory time has run.

This principle has been applied in trademark cases. *Layton Pure Food Co. v. Church & Dwight,* 182 F. 35, 40 (8th Cir. 1910) (except under "unusual conditions or extraordinary circumstances," a federal court applying a limitation statute by analogy will not bar damages remedy in a trademark infringement action if the analogous statute of limitation would not bar the action).

Several reasons underlie the use of the statutory period as the laches period. It enhances the stability and clarity of the law by applying neutral rules and principles in an evenhanded fashion rather than making the question purely discretionary. It also requires courts to make clear distinctions between threshold or special defenses or pleas in bar and the merits of the case. It enhances the rationality and objectivity of the process by preventing courts from short circuiting difficult issues on the merits by confusing or conflating the merits of an action with other defenses.

Although early federal decisions faithfully followed the presumption, later decisions outside the trademark area have somewhat eroded the requirement that only "extraordinary circumstances or unusual conditions" defeat the presumption favoring the statutory limitations period. *See, e.g., Gruca v. United States Steel Corp.,* 495 F.2d 1252, 1259 and n. 8 (3d Cir.1974) (effect of the analogous statute of limitation on a claim in equity is only burden-shifting). Some courts recently have looked at the analogous statute as simply one factor to be weighed in a determination of unreasonable delay and prejudice. *See Goodman v. McDonnell Douglas Corp.,* 606 F.2d 800, 805 (8th Cir.1979), *cert. denied* 446 U.S. 913, 100 S.Ct. 1844, 64 L.Ed.2d 267 (1980). Some courts in ruling on purely equitable claims have analyzed the effect of the analogous state limitation both before and after it has elapsed, and have concluded that unreasonable prejudicial conduct short of the limitation can bar the equitable claim. *See, e.g., Cannon v. Uni-*

*versity Health Sciences/Chicago Medical School,* 710 F.2d 351 (7th Cir.1983) (on claim for injunctive relief arising under 42 U.S.C. § 1983, laches can shorten the applicable time under the state limitation statute); *Gruca v. United States Steel Corp.,* 495 F.2d 1252, 1259 n. 8 (3d Cir.1974) (reference to an analogous statute of limitation "does not determine the minimum limit of the delay necessary to invoke the first element of the laches doctrine.")

The presumption should remain strong and uneroded in trademark cases. They are not "purely equitable" suits, as the Supreme Court noted in *Dairy Queen, supra.* They are mixed actions in law and equity. A strong presumption enhances objectivity and clear analysis in decision making. It clarifies and broadens the protection of the public from confusion and deception.

■ We therefore affirm the rule in the trademark context that, if the analogous statute of limitation has not elapsed, there is a strong presumption that plaintiff's delay in bringing the suit for monetary relief is reasonable. Only rarely should laches bar a case before the analogous statute has run. *Cf. Shouse v. Pierce County,* 559 F.2d 1142, 1147 (9th Cir.1977) (noting in the context of § 1983 action that it is "extremely rare for laches to be effectively invoked when a plaintiff has filed his action before limitations in an analogous action of law has run.")

1. The standard requiring only unreasonable delay and prejudice to the defendant used by the District Court below has been used by other courts in cases in which the plaintiff sought to extend the normal legal statute of limitation period, *see Gardner v. Panama R.R. Co.,* 342 U.S. 29, 30–31, 72 S.Ct. 12, 13–14, 96 L.Ed. 31 (1951), or cases in which no issue has been made regarding the presumptive effect of the analogous statute of limitation, *see, e.g., American Home Products Corp. v. Lockwood Mfg. Co.,* 483 F.2d 1120 (6th Cir.1973); *Cuban Cigar Brands N.V. v. Upmann International, Inc.,* 457 F.Supp. 1090 (S.D.N.Y.1978), *aff'd* 607 F.2d 995 (2d Cir.1979). This more general, less rigorous standard should not be used when the plaintiff brings an action prior to expiration of a presumptively effective statute of limitation.

### III.

■ The District Court did not consider the application of the presumption to the facts of this case.[1] The applicable statute is the three year statute for tortious injury to property, Tenn.Code Ann. § 28–3–105 (1980). To set aside the presumptive period, a court must articulate compelling reasons. Although the trial court here correctly placed the burden on each of the laches elements on the defendant, the court did not test the defendant's proof against a standard that presumed Tandy's 32-month delay to be reasonable.

■ When we apply this standard to the present case, it is clear that Tandy's behavior does not compel the extraordinary imposition of laches before the analogous statute has run.[2] Malone and Hyde has pointed to no evidence of bad faith on Tandy's part, nor of any effort by Tandy to mislead Malone and Hyde. There is no evidence of behavior amounting to acquiescence, a doctrine related to laches relying on express or implied consent theories, by Tandy. A reasonable businessman should be afforded some latitude to assess both the impact of another's use of an allegedly infringing trademark as well as the wisdom of pursuing litigation on the issue. The 32-month delay may be evidence of corporate indecision but it is not so unreasonable as to overcome the presumption afforded by the analogous 3-year statute.

2. In the context of purely equitable relief, the correct standard may be the somewhat more general and discretionary standard of determining only unreasonable delay and prejudice to the defendant. *See Patterson v. Hewitt,* 195 U.S. 309, 25 S.Ct. 35, 49 L.Ed. 214 (1904). To deny injunctive relief in trademark litigation, however, some affirmative conduct in the nature of an estoppel, *see, e.g., James Burrough Ltd. v. Sign of Beefeater, Inc.,* 572 F.2d 574, 578–79 (7th Cir.1978), or conduct amounting to "virtual abandonment," *see University of Pittsburgh v. Champion Products, Inc.,* 686 F.2d 1040, 1044–45 (3d Cir.1982), is necessary. On the basis of the record before us, Tandy's behavior does not fit either of the above categories. Therefore, the District Court erred in using laches to bar both forms of relief.

## IV.

In addition to its conclusion that Tandy's 32-month delay was sufficiently unreasonable to invoke laches, the District Court held that Malone and Hyde justifiably relied on Tandy's inaction against Scavariel's Arizona-based AUTO SHACK store. The District Court essentially held that Malone and Hyde could "tack on" the time during which Scavariel developed the marks in Arizona, a period of three years, to demonstrate further the unreasonableness of Tandy's delay.

This holding is error. For purposes of laches an assignee of a trademark can tack on the period during which the assignor used the mark, *PepsiCo, Inc. v. Grapette Co.*, 416 F.2d 285 (8th Cir.1969), but only when the mark is assigned in conjunction with the sale of the goodwill of the business to which it is attached. Section 10 of the Lanham Act, 15 U.S.C. § 1060 (1982), so provides.[3] There was no such transfer here.

Scavariel had developed an apparently prosperous Phoenix based business, and had generated goodwill from the consuming public in that geographic area. Had Scavariel sold his Phoenix business to Malone and Hyde along with his permission for Malone and Hyde to use the name AUTO SHACK, he would have assigned both the mark and its goodwill. Instead, Scavariel kept the Arizona business. Although he was forthcoming and helpful to Malone and Hyde in providing information about auto parts marketing, perhaps with an eye toward a future working relationship or merger, he did nothing that conveyed to Malone and Hyde the good will of the business. *See Greenlon, Inc. of Cincinnati v. Greenlawn, Inc.*, 542 F.Supp. 890 (S.D.Ohio 1982), for similar facts and reasoning. The transaction functioned as a naked assignment and nothing more. Thus, a tacking argument dependent on an assignment theory fails.

In addition, Malone and Hyde may not justifiably rely on Tandy's inaction against Scavariel in a contained geographic area as a bar to challenging their widespread use of the mark in areas outside of that contained area. *See Conan Properties, Inc. v. Conans Pizza, Inc.*, 752 F.2d 145 (5th Cir.1985). Tandy's failure to object to limited geographic use of a mark does not bar it from objecting later to widespread use of the mark. *Id.* at 152.

Accordingly, the judgment of the District Court is reversed and remanded for proceedings not inconsistent with this opinion.

---

3. Section 10, 15 U.S.C. § 1060 provides in relevant part:

A registered mark or a mark for which application to register has been filed shall be assignable with the goodwill of the business in which the mark is used, or with that part of the goodwill of the business connected with the use of and symbolized by the mark, and in any such assignment it shall not be necessary to include the goodwill of the business connected with the use of and symbolized by any other mark used in the business or by the name or style under which the business is conducted. Assignments shall be by instruments in writing duly executed....