February 19, 1993

CLERK OF COURT
SUPREME COURT. CNMI
FILED

93 FEB 19 P2: 49

BY: _____

IN THE SUPREME COURT OF THE
COMMONWEALTH OF THE NORTHERN MARIANA ISLANDS

| | |
|---|---|
| TOMAS S. RIOS, et al., )<br><br> Plaintiffs/Appellants, )<br><br> v. )<br><br>MARIANAS PUBLIC LAND )<br>CORPORATION, )<br><br> Defendant/Appellee. )<br>_____) | Appeal No. 92-019<br>Civil Case No. 91-244<br><br>OPINION |

Argued and submitted December 7, 1992

Attorney for Appellants: Reynaldo O. Yana, Esq.
 P.O. Box 52
 Saipan, MP 96950

Attorney for Appellee: Bret Lubic, Esq.
 P.O. Box 1267
 Saipan, MP 96950

BEFORE: DELA CRUZ, Chief Justice, VILLAGOMEZ and BORJA, Justices.

DELA CRUZ, Chief Justice:

Plaintiffs brought this action to recover from the Marianas Public Land Corporation ("MPLC") certain lands allegedly belonging to them as the heirs of Francisco Rios ("Rios"), deceased. Alternatively, they ask that they be compensated with public land equivalent in value. Both sides moved for summary judgment. Concluding that the plaintiffs' action is barred by the 20-year statute of limitations and by laches, the court granted summary judgment in favor of MPLC and dismissed the case.

514

Because we agree with the trial court that this action is barred by the twenty-year statute of limitations governing the recovery of an interest in land, we affirm the summary judgment entered in favor of MPLC.

We disagree, however, that laches also bars the action. The record below shows that there are material issues of fact with respect to whether the action is barred by laches. The grant of summary judgment based on laches was, therefore, erroneous.

## I. FACTUAL AND PROCEDURAL HISTORY

This case relates to a parcel of land of approximately 24 hectares on the shores of Lake Susupe, Saipan, now designated as Lot 47-4. When Japan administered the islands, Lot 47-4 consisted of (and is referred to herein) as Lots 69, 70, 77, and 78.

On March 1, 1919, Francisco Rios ("Rios") sold a 3.8 hectare portion of Lot 77 to Jose Ada ("Ada"). In 1929, Ada borrowed 20,000 Yen from Nanyo Kohatsu Kabushiki Kaisa ("NKK"), a Japanese company.[1] That year also, Ada leased to NKK 24.5 hectares of land in Finasisu.[2] The lease was for ten years, and encompassed the same lots 69, 70, 77, and 78. The total lease payment of 6,000 Yen was used to offset the interest on the loan to Ada for the first three years.

In 1934, Rios's then heirs sued Ada in the Japanese Government

---

[1] Ada was to repay the loan by August 25, 1933.

[2] "Finasisu" is the area of Saipan just above Lake Susupe. There is evidence in the exhibits contained in the "Report to the Land Investigation Office" that Ada sold, rather than leased, the 24.5 hectares to NKK.

515

court (known as the Saipan District Court) seeking the return of the 3.8 hectare portion of Lot No. 77. They claimed that Ada had only leased the property, not purchased it.[3] The Japanese tribunal held that Ada had purchased, not leased, the 3.8 hectare portion of Lot 77.

After World War II, the lots appear to have escheated to the Trust Territory of the Pacific Islands ("TTPI"),[4] and MPLC succeeded as title trustee to all public land in the Northern Marianas at the inception of the Commonwealth Government in 1978.

In 1948, Jesus and Miguel Rios, two heirs of Francisco Rios, filed separate land claims with the Saipan District Office of Civil Administration for the land in Finasisu.[5] It is not clear from the record before us what became of Jesus and Miguel's claims. Whether the Saipan District Land Title Office ever issued a title determination pursuant to the claims filed by Jesus and Miguel Rios is not known from the record below.[6]

On March 21, 1991, over 50 years after their predecessors had failed in their pre-war attempt to regain the 3.8 hectare portion of Lot 77, plaintiffs brought the present action to recover not just a portion of Lot 77, but Lots 69, 70, and 78 as well.

---

[3] There is no indication in the facts that the heirs of Rios sued for the return of Lots 69, 70 and 78, which Ada had also leased or sold to NKK. In fact, there is little in the record as to exactly how the Rios family lost the lots or how Jose Ada obtained them.

[4] In their complaint, plaintiffs alleged that the property escheated to the Government of the TTPI. See Complaint at paragraph 8.

[5] This is the same land that Ada leased or sold to NKK.

[6] Both parties state that there has never been a determination of ownership issued by the Northern Marianas Land Commission adjudicating title to the property.

In their complaint, plaintiffs alleged that Rios had owned all 24 hectares of Lots 69, 70, 77 and 78; that Rios sold only 3.68 hectares of Lot 77 to Ada; that Ada had fraudulently sold to NKK all 24 hectares to NKK; that after World War II, the property escheated to the TTPI;[7] that MPLC, as the TTPI's successor in interest, is in possession of the property; and that the heirs of Rios have not been compensated by MPLC or the TTPI.

In its motion for summary judgment, MPLC contended that plaintiffs' action is barred by either the statute of limitations or laches or, in the alternative, on the ground that plaintiffs have failed to exhaust their administrative remedies. The trial court agreed, holding as follows:

> The plaintiffs are barred by the statute of limitation under 7 CMC Section 2502. If in fact they own Lots 69, 70 and 78, they had all the opportunity to bring the action in 1934, as they did for a portion of Lot 77.

> The plaintiffs have slept on their rights and are barred by the doctrine of laches. Palacios v. T.T.P.I., 2 CR 904 (D.C.N.M.I. App.Div. 1986), aff'd, 838 F.2d 474 (9th Cir. 1988).

Order of the Superior Court dated June 30, 1992 (hereafter "Order").

## II. ISSUE PRESENTED AND STANDARD OF REVIEW.

The issue before us is whether the trial court erred in granting MPLC's motion for summary judgment since it improperly weighed the evidence and made a factual determination regarding

---

[7] Escheat means "the reversion or forfeiture of property to the government upon the happening of some chance event or default." 27 Am.Jur.2d Escheat Section 1 (1966). Although escheat of real property generally occurs when a landowner dies without heirs, it may also occur where succession is not claimed within some reasonable time, which is usually defined by statute. Id. at Sections 2 and 3.

ownership of the disputed lots.

The trial court granted summary judgment on two grounds. First, the trial court ruled that the applicable statute of limitations had run. Second, it ruled that plaintiffs action is barred by laches. We review de novo an order granting summary judgment. Apatang v. Marianas Public Land Corporation, No.89-013, 1 N.Mar.I. 36 (N.M.I. 1990).

We shall affirm the trial court's order granting summary judgment if we find that, as to the legal basis relied on, (1) there was no genuine issue of material fact and (2) the trial court correctly applied the substantive law. Apatang v. Marianas Public Land Corporation, No.89-013, 1 N.Mar.I. 36, 38 (N.M.I. 1990). We may also affirm if we find that the trial court's result is correct under a different theory. Ferreira v. Borja, No. 90-047 (N.M.I. Feb. 18, 1992). In our de novo review of a grant of summary judgment, we view the evidence and inferences to be drawn therefrom in favor of the non-moving party. Id.; Cabrera v. Heirs of De Castro, No. 89-018, 1 N.Mar.I. 102, 104 (N.M.I. 1990).

III. ANALYSIS

1. The Statute of Limitations Bar.

Plaintiffs contend that the trial court erred in granting MPLC's motion for summary judgment because it improperly weighed the evidence and made a factual determination regarding ownership of the disputed lots. As to the matter of ownership, the trial court wrote:

518

> There is no evidence from the exhibits that Francisco Rios owned Lots 69, 70, and 78. Lots 69, 70, and 78 was [sic] owned by Jose Ada. Jose Ada leased Lots 69, 70, and 78 to the [NKK] with the lease expiration 1939. However, from the exhibit, in a Report to the Land Investigation Office, it appears that Jose Ada was to have sold Lots 69, 70, and 78 to the [NKK]. Francisco Rios did not own Lots 69, 70, and 78. He owned only portion of Lot 77.[8]

Order at 3.

From this language it is apparent that the trial court touched on the substantive question of ownership of the lots at issue. Because Rios's claim of ownership to the lots must be established, its resolution via summary judgment, in view of the factual dispute as to ownership, was clearly improper.[9] A trial court cannot weigh the evidence and make findings on disputed factual issues on a motion for summary judgment. See Apatang.

The issue of ownership, however, is quite different from the issue of whether the Rios heirs' claim of ownership is barred by the applicable statute of limitations. Only if the claim is not barred may the court then proceed, at trial, to determine whether the Rios's land claim has validity. Thus, although the trial court improperly touched on the disputed question of ownership, its summary judgment ruling was based on its conclusion that the claim is barred.

The issue presented by MPLC's motion for summary judgment is

---

[8] MPLC argues further that even if Rios had once owned the land, his heirs lost their title and interest to the property upon the expiration of the statute of limitations following the sale of the land by Ada to NKK.

[9] We further note that the trial court itself questioned the ownership of the lots when it wrote: "[i]f in fact [plaintiffs] own Lots 69, 70, and 78, they had all the opportunity to bring the action in 1934, as they did for portion of Lot 77." Order at 3-4 (emphasis supplied). MPLC's answer denied that the lots belong to Rios, putting the issue in dispute.

519

whether Rios's heirs waited too long to file their claim of ownership to the property. Ownership of the property, although a disputed factual issue which must be proven at trial, is not a **material** fact necessary to determine whether the claim is barred by the statute of limitations.

The trial court needed only to determine whether the plaintiffs' action for "recovery" of the land was barred by either the statute of limitations or laches. The fact that the trial court addressed the disputed question of ownership to the property, although improper, was unnecessary, and does not render its ruling that the action is barred by the 20-year limitations period erroneous.

The statute of limitations applicable to claims for "recovery" of land, 7 CMC Section 2502, provides:

(a) The following actions shall be commenced only within 20 years after the cause of action accrues:
(1) Actions upon a judgment.
(2) Actions for the recovery of land or any interest therein.

(b) If the cause of action first accrued to an ancestor or predecessor of the person who presents the action, or to any other person under whom he or she claims, the 20 years shall be computed from the time when the cause of action first accrued.

On appeal, plaintiffs in fact do not dispute that the 20-year limitation period under 7 CMC Section 2502 has run. They instead argue that such statute does not bar their action because it is against MPLC, a government agency. They rely on our opinion in **Apatang**, and argue that "in a case against the Government the statute of limitations and applicable defenses of laches are tolled

520

or lifted by the Commonwealth's Public Purpose Land Exchange Authorization Act [of 1987]."[10] Brief of appellants at 6.

In _Apatang_, we held that the six-year statute of limitations, which governs land exchange issues, did not bar a landowner's action seeking adequate compensation based on a land exchange transfer conducted over 20 years earlier with the Trust Territory.[11] In _Apatang_ there was no dispute that Apatang's father owned the land that was exchanged with the government. In the instant case, however, plaintiffs' action was a claim of ownership to land. We did not rule in _Apatang_ that as to all actions involving land against MPLC, such as an action seeking recovery of an interest in land, the applicable statute of limitations can never be a bar.

We find that 7 CMC Section 2502 applies to this case because the action is, in fact, one for the recovery of land. The trial court correctly ruled that plaintiffs' action is barred by the statute because plaintiffs' cause of action accrued more than 20 years ago.

In their complaint, plaintiffs allege that MPLC has "held the land and converted it as a public land" [sic]. They asked the

---

[10] P.L. 5-33, codified at 2 CMC Section 4141, et seq. (hereafter, the "Act"). The Act became effective June 1, 1987, and authorizes MPLC to exchange public lands for private lands needed for a "public purpose." 2 CMC Sections 4142, 4143(e). The legislature deemed such land exchanges, "rather than monetary compensation, . . . [as] the preferred means of obtaining private lands for public purposes and of providing compensation of public purposes . . . ." 2 CMC Section 4145.

[11] In _Apatang_, we quoted the analysis to Section 7 of the Schedule on Transitional Matters, which provides that "[t]he legislature may permit claims against the Commonwealth Government by persons who were compensated inadequately for transfer of interest in property in the past, even though the applicable statute of limitations have expired. _Apatang_, slip op. at 7, 1 N.Mar.I. at 39 (emphasis in original). We also note that unlike _Apatang_, the allegation of wrong-doing in this case is against Jose Ada, a private person.

521

trial court to "order the defendant to return the said land to the plaintiffs." Complaint at 2-3. The action is clearly for the "recovery of land or any interest therein" and 7 CMC Section 2502 governs. That statute bars this action because, as we explain below, plaintiffs' cause of action accrued over twenty years ago.

The general rule is that the statute of limitations does not commence to run against the right to recover the possession of real property until the cause of action accrues. Grayson v. Harris, 279 U.S. 300, 49 S.Ct. 306, 73 L.Ed. 700 (1929); see generally, 51 Am.Jur.2d Limitation of Actions Section 120 (1970). The critical question of law we need to answer, then, is when did plaintiffs' cause of action "accrue"?

The answer is found in the Trust Territory Code and case law of the Trust Territory High Court. Under the Trust Territory Code, "any cause of action existing on May 28, 1951, shall be considered to have accrued on that date." 6 TTC Section 310 (1970). This statute applies to causes of action seeking to recover land or an interest therein. See Santos v. Trust Territory, 1 TTR 463 (Tr.Div. 1958); Rusasech v. Trust Territory, 1 TTR 472 (Tr.Div. 1958).

It is clear that plaintiffs' cause of action, i.e. their land claim, existed since May 28, 1951.[12] Both the plaintiffs' complaint and the undisputed facts show that plaintiffs (and their

---

[12] Plaintiffs allege wrong-doing in the first instance by Jose Ada, not MPLC, but fail to include Ada's heirs as defendants to this action. The record is unclear on this point, but it may be because only MPLC holds title to the lots. However, plaintiffs' allegations concerning Jose Ada highlight that their claim to the land may have existed well before the statutorily-mandated 1951 commencement date.

predecessors) were aware of their claim to the land and cognizant of the fact that the TTPI, after the war, was in possession of, or had a claim of interest to the land. In fact, one exhibit shows that in early 1948 Jesus and Miguel Rios did file a claim with the TTPI for the same land in Finasisu.

Thus, as a matter of law, the Rios's claim to the property existed on May 28, 1951, and their cause of action is deemed to have accrued on that date. 6 TTC Section 302. Therefore, their claim was barred by the 20-year statute of limitations, 6 TTC Section 302, after May 28, 1971.[13] For this reason, we hold that the trial court did not err in ruling that the statute of limitations has run on plaintiffs' claim.[14]

2. The Defense of Laches.

The trial court also ruled that laches bars the Rios's action. In granting MPLC's motion on this ground, the trial court ruled without any discussion that "[t]he plaintiffs have slept on their rights and are barred by the doctrine of laches." Order at 4, citing, Palacios v. TTPI, 2 CR 904 (D.C.N.M.I. App.Div. 1986), aff'd, 838 F.2d 474 (9th Cir. 1988).

Laches has been defined as "the neglect or delay in bringing suit to remedy an alleged wrong, which taken together with lapse of

---

[13] 6 TTC Section 302 was recodified as 7 CMC Section 2502.

[14] MPLC alternatively argues that plaintiffs have not exhausted their administrative remedies by not first pursuing their claim with the Land Commission, which has authority to adjudicate private claims to land ownership. We do not address this argument in view of our holding that the Rios's claim of ownership is barred by the statute of limitations. The record before us is also not clear that the property in question has been designated by the Land Commission for land registration, so as to give that agency jurisdiction to determine the question of ownership. See 2 CMC Section 4231.

time and other circumstances, causes prejudice to the adverse party and operates as an equitable bar." A.C. Aukerman Co. v. R.L. Chaides Construction. Co., 960 F.2d 1020, 1029-30 (Fed.Cir. 1992).

A defendant who asserts laches must prove two elements. First, he must show that "the plaintiff delayed filing suit for an unreasonable and inexcusable length of time from the time the plaintiff knew or reasonably should have known of its claim against the defendant," and, second, that "the delay operated to the prejudice or injury of the defendant." A.C. Aukerman Co., 960 F.2d at 1032, citing, Costello v. United States, 365 U.S. 265, 282, 81 S.Ct. 534, 543, 5 L.Ed.2d 551 (1961); see also Ada v. Ogo, 1 CR 1043 (D.C.N.M.I. App.Div. 1984).[15]

There is a _presumption_ of laches where the statute of limitations has run. See Palacios v. TTPI (and cases cited therein); Tandy Corp. v. Malone & Hyde, Inc., 769 F.2d 362, 365 (6th Cir. 1985), cert. den., 476 U.S. 1158, 106 S.Ct. 2277, 90 L.Ed.2d 719 (1986). Once a presumption arises, the plaintiff must "offer proof directed to rebutting the laches factors."[16] A.C. Aukerman Co., 960 F.2d at 1038. To rebut the presumption, a plaintiff must present evidence showing that its delay was

---

[15] Prejudice to the defendant caused by the plaintiff's delay may be either evidentiary or economic. Evidentiary prejudice results where the defendant cannot present a defense on the merits due to the loss of records, death of a witness, or unreliability of memories of events long past. Economic prejudice arises "where a defendant and possibly others will suffer the loss on monetary investments or incur damages which likely would have been prevented by earlier suit." A.C. Aukerman Co., 960 F.2d at 1033.

[16] The plaintiff "bears the burden only of coming forward with sufficient evidence to raise a genuine factual issue respecting the reasonableness of its conduct" once the defendant shows that plaintiff's delay is in excess of the time authorized under the applicable statute of limitations. A.C. Aukerman Co., 960 F.2d at 1039. The presumption of laches does not shift the burden on ultimate persuasion or proof on the defense of laches to the plaintiff; that burden remains with the defendant or other party which pleads the defense. See also, Palacios v. TTPI, 2 CR at 908-909.

reasonable or that the defendant did not suffer prejudice or both.[17] If the plaintiff's offer of proof raises a genuine issue of fact regarding either the reasonableness for its delay or the prejudice suffered by defendant, then the presumption of laches is overcome. Id.

In Palacios, the plaintiffs offered several reasons for their delay in an attempt to rebut the presumption of laches. The court found none of these reasons persuasive and held that the trial court had not abused its discretion in determining that the action was barred by laches. The trial court in Palacios rendered its decision on the issue of laches only after a two-day trial on the merits relating solely to that issue. Palacios, 2 CR at 907.

The instant case, however, was before the trial court on a motion for summary judgment. There was no trial to determine the facts. The only facts before the court were those stipulated to by the parties. Upon review of the record below, we determine that there are questions of fact to be answered before either of the two necessary elements comprising laches -- unexcused delay by the plaintiff and prejudice to the defendant -- could be established.

It is not clear from the record below whether plaintiffs' delay was inexcusable. For example, we note that plaintiffs claimed below that their delay in bringing this action arose from their lack of notice that the property had escheated to the government. If plaintiffs in fact had no notice of the property

---

[17] As justification for its delay, plaintiffs could attempt to show that it was involved in other litigation; suffering from poverty or illness; or deterred by wartime conditions. See A.C. Aukerman Co., 960 F.2d at 1033.

escheating to the government, that might excuse their delay in filing an action for the purposes of laches. See Portland Audubon Soc. v. Lujan, 884 F.2d 1233 (9th Cir. 1989), cert. den., 110 S.Ct. 1470, 108 L.Ed.2d 608 (1990). Because this issue came up on a motion for summary judgment, the plaintiffs' contention as to lack of notice rebuts the presumption of laches because it raises a material question of fact. The evidence at that point as to laches and the inferences to be drawn therefrom should have been resolved in favor of the Rios heirs, as the non-moving party. See Cabrera v. Heirs of De Castro.

In addition, as to the second element of laches, there are no facts in the record showing whether plaintiffs' delay in filing their action caused MPLC to suffer any prejudice. Such prejudice may be in the form of evidence, meaning that plaintiffs' delay results in MPLC's inability to present its case due, for example, to lost documents or witnesses long since deceased. This type of prejudice, however, is weakened since the record contains several legible and purportedly authentic legal documents. As to economic prejudice to MPLC, the record below at the time of summary judgment does not show what improvements have been made on the land, if any. All of these are factual issues relating to the elements of prejudice which need to be resolved at trial.

Because a number of unanswered questions remain with respect to both of the elements of laches, we hold that the grant of summary judgment based on laches was erroneous.

## IV. CONCLUSION

Since we hold that this action is barred by the twenty-year limitations period within which to recover land or an interest in land, we **AFFIRM** the trial court order granting summary judgment in favor of MPLC.

**Dated:** this 19th day of February, 1993 at Saipan, Commonwealth of the Northern Mariana Islands.

JOSE S. DELA CRUZ
Chief Justice

RAMON G. VILLAGOMEZ
Associate Justice

JESUS C. BORJA
Associate Justice