38 F.3d 1215
 33 U.S.P.Q.2d 1369
 NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
GRAND LODGE, FRATERNAL ORDER OF POLICE, Plaintiff-Appellee,
v.
LABOR COUNCIL MICHIGAN FRATERNAL ORDER OF POLICE, INC., the
Dale Corporation, and Dale Z. Jablonski,
Defendants-Appellants,
 Nos. 93-2073, 93-2491.
 United States Court of Appeals, Sixth Circuit.
 Oct. 24, 1994.
 
 Before: MARTIN and SUHRHEINRICH, Circuit Judges; and JORDAN, District Judge.*
 BOYCE F. MARTIN, JR., Circuit Judge.
 
 
 1
 Labor Council Michigan Fraternal Order of Police appeals the district court's grant of a preliminary injunction to Grand Lodge, Fraternal Order of Police in this trademark infringement action under Sections 32 and 43(a) of the Lanham Act, 15 U.S.C. Secs. 1051-1127. For the following reasons, we affirm.
 
 
 2
 Grand Lodge, Fraternal Order of Police is a national organization, composed of law enforcement personnel, that owns the following, federally registered trade names and marks: "Fraternal Order of Police," "FOP," and the FOP "star" design logo. Grand Lodge charters state and subordinate fraternal lodges, including State Lodge of Michigan, Fraternal Order of Police. These state and subordinate lodges also use the FOP name and marks, subject to the control of Grand Lodge.
 
 
 3
 Labor Council Michigan Fraternal Order of Police was formed in 1972, under the name Michigan Fraternal Order of Police, Labor Council, by State Lodge of Michigan to function as a police officers' labor union in collective bargaining. Despite a provision in the Grand Lodge constitution prohibiting labor unions from becoming integral parts of state lodges, Labor Council remained a part of State Lodge of Michigan until 1985, when Labor Council incorporated itself under its present name as a separate entity. Since 1985, Labor Council has used the name "Labor Council Fraternal Order of Police" and a mark similar to the FOP star mark. The United States Patent and Trademark Office granted registration to Labor Council's altered star mark, but, at least initially, has denied registration to the name Labor Council Fraternal Order of Police because of the likelihood of confusion with Grand Lodge's registered marks. Grand Lodge has filed a cancellation petition with the Office alleging fraud in the obtaining of Labor Council's star mark registration. Beginning in 1985, State Lodge of Michigan clearly was aware that Labor Council continued to use the phrase "fraternal order of police," although neither State Lodge nor Grand Lodge ever gave Labor Council explicit permission to use that phrase after Labor Council's incorporation. In 1986, however, State Lodge passed a resolution allowing Labor Council to use "all assets" Labor Council used while affiliated with State Lodge.
 
 
 4
 Labor Council initially raised funds solely from dues contributed by its member police officers. In 1989, State Lodge sold Labor Council the right to publish The Peace Officer, a magazine that previously had been published by State Lodge. The Dale Corporation, headed by Dale Jablonski, had conducted direct phone solicitations on behalf of The Peace Officer when it was published by State Lodge, and continued to do so after Labor Council took over publication of the magazine. In late 1989 or early 1990, Labor Council began fundraising efforts involving the general public, using Dale Corporation to conduct direct residential phone solicitations on its behalf. Evidence submitted by Grand Lodge strongly indicates that Dale Corporation committed fraud in inducing the general public to contribute to Labor Council. Specifically, Dale Corporation representatives appear frequently to have misrepresented the identity of the actual fundraising organization as the "Fraternal Order of Police" to solicited persons, while claiming that contributions would be used for a high school community program entitled "Students on Sobriety," or "S.O.S.." Dale Corporation representatives apparently posed as police officer members of the local fraternal lodge, and informed solicited individuals that the S.O.S. program included police officer visits to local high schools to promote sobriety. Dale Jablonski's testimony, part of the sealed record on appeal, indicates that such officer visits never took place, that less than one percent of solicited funds went to the S.O.S. program, and that the program consisted exclusively of distribution of bumper stickers and literature to solicited individuals.
 
 
 5
 Grand Lodge alleges that it first became aware of Labor Council's use of the phrase "fraternal order of police" when Grand Lodge received complaints in 1990 concerning Dale Corporation representatives' high-pressure solicitation tactics, rude behavior, use of obscenities over the phone, and misrepresentations. Grand Lodge also received complaints regarding duplicative collection efforts by Labor Council and a local, chartered organization subordinate to the State Lodge. In August 1990, State Lodge terminated its relationship with Dale Corporation and advised it that it was prohibited from using the FOP name or mark. The State Lodge termination letter, however, recognized that the Corporation continued to work for Labor Council, and stated that the Corporation thus could continue to use only the incorporated name of its client--"Labor Council, Michigan Fraternal Order of Police"--in its fundraising efforts. Grand Lodge subsequently initiated this action in September 1992, alleging trademark infringement and various state law causes of action.
 
 
 6
 Grand Lodge sought a preliminary injunction from the district court prohibiting Labor Council and Dale from using Grand Lodge's or Labor Council's marks. The district court found that Grand Lodge had shown irreparable and continuing harm to its own marks and reputation, a "likelihood of confusion" between the parties' marks, and a resultant likelihood of success on the merits, satisfying the requirements set forth in Frisch's Restaurants v. Elby's Big Boy, 670 F.2d 642, 651 (6th Cir.), cert. denied, 459 U.S. 916 (1982). Accordingly, on July 9, 1993, the district court granted Grand Lodge's request for a preliminary injunction. The injunction drafted by the district court prohibited Labor Council from engaging in various types of specific conduct, and also required Labor Council to take the following affirmative action: (1) change its name; (2) return donations solicited under the "Fraternal Order of Police" name; and (3) deliver documents bearing the infringing name and mark to Grand Lodge. The district court subsequently denied Labor Council's motion to vacate or stay the injunction, and this timely appeal followed. On appeal, we review the district court's grant of the injunction for an abuse of discretion. National Board of YMCA v. Flint YMCA, 764 F.2d 199, 200 (6th Cir.1985).
 
 
 7
 Labor Council maintains that the district court erred in finding that Grand Lodge's claims are not barred by the doctrine of laches. Labor Council asserts that it received an express license to use the "fraternal order of police" phrase and marks from State Lodge upon its disassociation from State Lodge in 1985, and that Grand Lodge was aware at that time that Labor Council, as well as Dale Corporation, subsequently continued to use those marks. Grand Lodge did not file the present action until September 1992. Accordingly, Labor Council argues that Grand Lodge "sat on its rights" for seven years, and that Grand Lodge is therefore incapable of showing irreparable harm to those rights from Labor Council's and Dale Corporation's actions. As a result, Labor Council contends, the present action should be barred in its entirety, or, alternatively, the preliminary injunction should be vacated.
 
 
 8
 The doctrine of laches is invoked when a trademark owner negligently and unintentionally fails to protect its rights. Elvis Presley Enterprises, Inc. v. Elvisly Yours, Inc., 936 F.2d 889, 894 (6th Cir.1991). In order for laches to operate as a bar to trademark litigation, "some affirmative conduct in the nature of estoppel ... or conduct amounting to 'virtual abandonment' ... is necessary." Id. (quoting Tandy Corp. v. Malone & Hyde, Inc., 769 F.2d 362, 366 n. 2 (6th Cir.1985), cert. denied, 476 U.S. 1158 (1986)). The district court found that State Lodge, by its silence, granted Labor Council an implied, revocable license in 1985 to use Grand Lodge's marks, assuming that State Lodge had the power to grant such a license. The court further found that, once Labor Council began its solicitation of the general public through Dale Corporation, State Lodge revoked the implied license in the 1990 letter in which it disassociated itself from Dale. According to the district court, Grand Lodge's subsequent delay in filing suit was due, at least in part, to a change in counsel, as well as an effort to resolve the disputed trademark use without recourse to the legal system. These findings are not clearly erroneous. Grand Lodge's course of conduct, in our view, does not amount to affirmative conduct in the nature of estoppel, or conduct amounting to "virtual abandonment" of its rights. We therefore conclude that the district court did not err in refusing to dismiss this action on the ground of laches.
 
 
 9
 Labor Council also maintains that, in the face of Grand Lodge's delay, there can be no necessary finding of irreparable harm sufficient to support the injunction. Grand Lodge asserts, and the district court found, that the "irreparable harm" at issue here concerned Labor Council's solicitations of the general public for the first time, beginning in late 1989 or early 1990, through Dale Corporation. Based on the evidence in the record, it appears that these solicitations were, at times, seriously misleading at best, and fraudulent at worst. In fact, Grand Lodge received a number of complaints from members of the general public regarding the solicitations and attendant collection efforts, alerting Grand Lodge to Labor Council's and Dale Corporation's use of Grand Lodge's marks in this manner. Grand Lodge's delay in filing suit after learning of this use, as discussed above, was not unreasonable, and does not mandate a finding that the harm was not irreparable--especially given the fact that Dale Jablonski's subsequent testimony indicated that the solicitation program was tainted by various misrepresentations. The district court did not err in concluding, on this evidence, that Grand Lodge was suffering irreparable and continuing harm to its own marks and reputation, as required for the grant of the injunction.
 
 
 10
 In conjunction with irreparable harm, a showing of "likelihood of confusion" is sufficient to obtain preliminary injunctive relief in an action under Section 43(a) of the Lanham Act. Frisch's, 670 F.2d at 647-51. Labor Council maintains that the district court erred in finding a likelihood of confusion between Labor Council's marks and those of Grand Lodge, because the United States Patent and Trademark Office had previously granted a registration to Labor Council for its altered star mark. Although the registration is prima facie evidence of the mark's validity and Labor Council's right to use the mark, and likelihood of confusion is in fact one element in the Office's decision to grant a registration, the Office's action in granting the registration does not end our inquiry. In Frisch's, 670 F.2d at 648, we adopted a list of eight factors that are relevant to an analysis of likelihood of confusion:
 
 
 11
 1. strength of the plaintiff's mark;
 
 
 12
 2. relatedness of the goods;
 
 
 13
 3. similarity of the marks;
 
 
 14
 4. evidence of actual confusion;
 
 
 15
 5. marketing channels used;
 
 
 16
 6. likely degree of purchaser care;
 
 
 17
 7. defendant's intent in selecting the mark;
 
 
 18
 8. likelihood of expansion of the product lines.
 
 
 19
 The district court here analyzed each of these factors in its opinion. In doing so, the court correctly observed, in particular, that Grand Lodge's mark is nationally recognized, that Grand Lodge's and Labor Council's marks are visually quite similar, that the general public likely is unaware of the distinction between Labor Council and Grand Lodge, that Labor Council adopted its mark with the intention of benefitting from its prior affiliation with State Lodge, and that Grand Lodge submitted evidence of actual confusion: the customer complaints that it, rather than Labor Council, received. As we stated in Frisch's, "it is difficult to conceive of a situation where a showing of substantial actual confusion would not result in a legal conclusion of likelihood of confusion." Id. at 648 n. 5. Based on the showing of actual confusion made by Grand Lodge here, in addition to all of the other factors weighing in Grand Lodge's favor, the district court correctly found that there is a likelihood of confusion between Labor Council's and Grand Lodge's marks. Accordingly, we conclude that the court did not abuse its discretion in entering the preliminary injunction.
 
 
 20
 We have carefully considered the remainder of Labor Council's claims, which challenge the scope of the injunction, and find them to be meritless. As the district court noted in its supplemental order dated August 28, 1993, the provisions of the injunction "simply prevent Labor Council's continued use of FOP marks in relation to solicitation of the general public." The injunction is narrowly tailored to this end, and does not impose an undue hardship on Labor Council. Moreover, to the extent that Labor Council stipulated to certain injunctive provisions, and did not allege a basis or desire for relief from those provisions in the district court, it has waived any such objections. See Estate of Quirk v. Commissioner, 928 F.2d 751, 759 (6th Cir.1991) (stipulation may operate as waiver of legal argument); Sinicropi v. Milone, 915 F.2d 66, 68 (2d Cir.1990) (party to a stipulation may not withdraw from agreement unilaterally without court action).
 
 
 21
 For the foregoing reasons, the judgment of the district court is affirmed.
 
 
 
 *
 The Honorable Leon Jordan, United States District Judge for the Eastern District of Tennessee, sitting by designation