UNITED STATES of America, Plaintiff,

v.

Patricia A. ROBBINS, a/k/a Patricia A. Doyle, Defendant.

Civ. A No. 92–40347–FL.

United States District Court,
E.D. Michigan, S.D.,
at Flint.

April 22, 1993.

Sheridan V. Holzman, Southfield, MI, for plaintiff.

Juliet L. McCracken, UAW–GM Legal Services Plan, Flint, MI, for defendant.

## MEMORANDUM OPINION AND ORDER

NEWBLATT, District Judge.

Pending before the Court are cross motions for summary judgment on a claim by the United States to collect a defaulted student loan payment. Defendant acknowledges that unless she has a valid defense, she owes a debt of $986.20 from two National Direct Student Loans[1] that she obtained in 1980 while attending Ferris State University in Big Rapids, Michigan. The university issued the loans in 1980. They became due October 1, 1981, nine months after the defendant ceased carrying a half-time academic case load. The university declared Ms. Robbins in default on the loans and assigned payment to the United States on June 30, 1985.

Defendant claims that the United States is barred by laches from collecting the debt. In particular, defendant contends that she left the university because of racial discrimination by the university. This discrimination, she contends, would constitute a defense to payment of the loan. Defendant claims that she was unaware of collection efforts by the university, and that because the universi-

---

**1.** These loans are authorized by Title IV–E of the Higher Education Act of 1965 ("HEA"), as amended, 20 U.S.C. §§ 1087aa et seq..

ty waited five years prior to assigning the loan, and the government waited seven years to file suit, she is unable to prove her defense of discrimination due to a decline in her memory of events.

### Analysis

■ The motion is before the Court on summary judgment, and the familiar standard of Fed.R.Civ.P. 56 applies. Defendant has not argued that the statute of limitations has passed, and that argument, if it existed, is now waived as it was not affirmatively pled. *Colonial Refrigerated Transp. Inc. v. Worsham,* 705 F.2d 821, 826 (6th Cir.1983); Fed.R.Civ.P. 8(c); 5 C. Wright & A. Miller, *Federal Practice and Procedure* § 1278 & n. 11 (1990); 2A J. Moore, *Federal Practice* ¶ 8.27[4] & n. 6 (1993).

The statute of limitations is certainly no bar to collection, however, because Congress amended the Higher Education Act of 1965 ("HEA" or "the Act") in 1991 to abrogate the six-year limitations period that formerly applied to debt collection cases under the Act. 20 U.S.C.A. § 1091a(a), as amended by Pub.L. 102–26, § 3(a), 105 Stat. 124, April 9, 1991.

### I. Can laches apply as a defense to a legal action under a federal statute where Congress has abrogated the statute of limitation?

#### A. No state statute of limitation is available.

■ Laches is an equitable doctrine and, as a general rule, remains inapplicable to legal claims for damages. *E.g., Clark v. Amoco Production Co.,* 794 F.2d 967, 971 (5th Cir.1986); *Golotrade Shipping and Chartering, Inc. v. The Travelers Indemnity Co.,* 706 F.Supp. 214, 220 (S.D.N.Y.1989); D. Dobbs, *Remedies* § 2.3 (1973).[2] Usually, cases brought at law are limited by statutes of limitation. However, Congress does not always provide a statute of limitations for federal claims, and federal courts often borrow analogous state statutes of limitation in these cases. *Holmberg v. Armbrecht,* 327 U.S. 392, 395, 66 S.Ct. 582, 584, 90 L.Ed. 743 (1946) ("the silence of Congress has been interpreted to mean that it is federal policy to adopt the local law of limitation."); *see e.g.,* 71 ALR Fed. 257 (discussing cases applying state statutes of limitations to civil actions for securities fraud under § 10(b) of the Securities Exchange Act of 1934, 15 U.S.C. § 78j(b)).

■ In the Sixth Circuit, as well as others, there is a strong presumption that a plaintiff's delay in bringing an action under federal law is reasonable so long as the analogous state statute of limitations period has not elapsed. *Elvis Presley Enterprises v. Exclusively Yours, Inc.,* 936 F.2d 889, 894 (6th Cir.1991); *see Tandy Corp. v. Malone & Hyde, Inc.,* 769 F.2d 362, 365–66 (6th Cir. 1985), *cert. denied,* 476 U.S. 1158, 106 S.Ct. 2277, 90 L.Ed.2d 719 (1986) (citing cases).

In the case of the statute at issue in the case at bar, however, Congress has expressly

---

**2.** The Supreme Court has traditionally applied laches as a defense to cases brought in admiralty. *E.g., Gutierrez v. Waterman S.S. Corp.,* 373 U.S. 206, 83 S.Ct. 1185, 10 L.Ed.2d 297 (1963), and to cases involving the transfer of negotiable instruments. *Clearfield Trust Co. v. United States,* 318 U.S. 363, 369, 63 S.Ct. 573, 576, 87 L.Ed. 838 (1943).

Claims in equity, of course, invite equitable defenses, including laches. *Annotation,* 96 L.Ed. 37, 38 (citing cases).

Claims that combine issues of law and equity often allow equitable defenses. In the trademark area, for instance, although a jury trial is required for damages under § 35 of the Lanham Act of 1946, 15 U.S.C. § 1117 (1988), *Dairy Queen v. Wood,* 369 U.S. 469, 478, 82 S.Ct. 894, 900, 8 L.Ed.2d 44 (1962), laches may be pled as a defense. *San Francisco Arts & Athletics, Inc. v.*

*United States Olympic Committee,* 483 U.S. 522, 532 n. 6, 107 S.Ct. 2971, 2978 n. 6, 97 L.Ed.2d 427 (1987); *Tandy Corp. v. Malone & Hyde,* 769 F.2d 362, 365 (6th Cir.1985), *cert. denied,* 476 U.S. 1158, 106 S.Ct. 2277, 90 L.Ed.2d 719 (1986) (citing cases). No statute of limitations exists for Lanham Act litigation.

In the patent area, which also combines legal and equitable claims, laches is allowed as a defense to a claim for damages even though 35 U.S.C. § 286 bars recovery for infringements that occurred more than six years prior to suit. *A.C. Aukerman Co. v. R.L. Chaides Construction Co.,* 960 F.2d 1020, 1028–32 (Fed.Cir.1992). The Supreme Court has a long history of considering the application of laches to claims that mix law and equity. *Annotation,* 96 L.Ed. 37, 42 (citing cases).

proscribed the application of a state statute of limitation to the suit for collection by enacting Pub.L. 102–26, § 3(a), 105 Stat. 124, Act of April 9, 1991, to amend 20 U.S.C. § 1091a(a).

The present version of 20 U.S.C. § 1091a states in pertinent part:

### § 1091a. Statute of limitations

#### (a) In general

(1) It is the purpose of this subsection to ensure that obligations to repay loans and grant overpayments are enforced without regard to any Federal or State statutory, regulatory, or administrative limitation on the period within which debts may be enforced.

(2) Notwithstanding any other provision of statute, regulation, or administrative limitation, no limitation shall terminate the period within which suit may be filed, a judgment may be enforced, or an offset, garnishment, or other action initiated or taken by—

(A) an institution that receives funds under this subchapter ...

\* \* \* \* \* \*

(D) the Secretary, the Attorney General, ...

20 U.S.C.A. § 1091a(a), as amended by Pub.L. 102–26, § 3(a), 105 Stat. 124, April 9, 1991. This language clearly prohibits application of any limitations period.

### B. Determination of the Applicable Standard.

In those situations where no statute of limitations is applicable, courts have sometimes applied equitable barriers to recovery. To examine whether that course is available in this case, however, this Court must determine whether such a step is consistent with federal policy. *County of Oneida v. Oneida Indian Nation of New York State,* 470 U.S. 226, 240 n. 13, 244 n. 16, 105 S.Ct. 1245, 1255 n. 13, 1256–57 n. 15, 84 L.Ed.2d 169 (1984).

In *County of Oneida,* an Indian tribe sued a New York county on a claim for ejectment based on land that was taken 175 years earlier. The suit was brought under federal common law in which no statute of limitations was applicable. 470 U.S. at 240, 105

S.Ct. at 1254. The plurality found for the Oneida tribe and refused to rule on the county's defense of laches, holding that the defense had not been properly raised on appeal. *Id.,* at 244–45, 105 S.Ct. at 1256. The plurality noted, however, that laches appeared inapplicable because the claim was brought at law, and laches also violated federal policy with regard to Indian land rights. *Id.,* at 244 n. 16, 105 S.Ct. at 1256–57 n. 16.

Justice Stevens, writing in dissent for Chief Justice Burger and Justices White and Rehnquist, found that the issue had been properly raised and would have applied laches to bar the claim. *Oneida,* 470 U.S. at 262, 105 S.Ct. at 1266 (Stevens, J., dissenting). The dissent agreed, however, that "the application of a traditional equitable defense in an action at law is something of a novelty." *Id.* The Oneida tribe's claim was distinguishable from other common law claims because "common-law real property principles were often tempered by equitable considerations...." *Id.*

Justice Stevens also argued that because the case arose under federal common law, "the Court would not risk frustrating the will of the legislature [Footnote 12] by applying this familiar doctrine of equity." *Id.* Footnote 12 stated, "In deference to the doctrine of the separation of powers, the Court has been circumspect in adopting principles of equity in the context of enforcing federal statutes. See generally, *Weinberger v. Romero Barcelo,* 456 U.S. 305 [102 S.Ct. 1798, 72 L.Ed.2d 91] (1982); *TVA v. Hill,* 437 U.S. 153 [98 S.Ct. 2279, 57 L.Ed.2d 117] (1978); *Hecht Co. v. Bowles,* 321 U.S. 321 [64 S.Ct. 587, 88 L.Ed. 754] (1944); Plater, *Statutory Violations and Equitable Discretion,* 70 Calif.L.Rev. 524, 592 (1982)."

While the *Oneida* dissent is only a dissent, it did represent the views of four justices. Since the plurality did not decide the laches issue, and the dissent's reasoning was sound, this Court finds the *Oneida* dissent's analysis should be considered in determining whether laches is applicable to a federal claim for which no statute of limitations is applicable.

**C. Application of *Oneida* Dissent's Reasoning to the Higher Education Technical Amendments of 1991.**

█ The Court must consider whether applying laches is inconsistent with the Congressional intent in amending the HEA. 470 U.S. at 262, 105 S.Ct. at 1266. The former statute of limitations clause provided the United States with six years from the date that the collection was assigned to the Department of Education from the educational institution. *United States v. Menatos*, 925 F.2d 333, 335 (9th Cir.1991); § 484A(a)(4)(C) of the HEA, 20 U.S.C. § 1091a(a)(4)(C) (repealed).

The new statute stated that its "purpose" is to "ensure that obligations to repay loans ... are enforced without regard to *any* ... statutory, regulatory or administrative limitation." 20 U.S.C. § 1091a(a)(1) (emphasis added). This language is broad and, when read with the understanding that the previous limitations period was six years, suggests that Congress fully intended to open the courts to recovery on older debt claims.

On the other hand, Congress listed three types of limits that it did not wish to limit recovery: "statutes" "regulations" and "limitations," and it could have listed "equitable defenses" as well. However, because debt collection on a contract is a legal claim, Congress might well have thought such language superfluous. *See County of Oneida*, 470 U.S. at 244 n. 16, 105 S.Ct. at 1256–57 n. 16 ("application of the equitable defense of laches in an action at law would be novel indeed."). No committee reports were filed for the Higher Education Technical Amendments of 1991 predecessor bill, H.R. 1285. Congress provides no further explicit guidance as to whether it desired equitable defenses to limit collection.

Congress might also have considered that direct student loans are not collectable after the disability or death of the student. 31 C.F.R. § 674.58 (1992). This provision places an outside limit on the government's ability to pursue the debtor and prevents the open-ended claim that was the basis of the *Oneida* claim, "the Court has always pre-

sumed that *some* principle of limitation applies to federal causes of action." *Oneida*, 470 U.S. at 258, 105 S.Ct. at 1264 (Stevens, J., dissenting) (footnote omitted).

The Court finds that while there is evidence on both sides, the best reading of the statute is one that comports with the direction of the amendment, to eliminate barriers to recovery. To read the statute in such a manner ensures that the courts maintain the greatest respect for Congressional intent and separation of powers. *See Id.*, at 262, 105 S.Ct. at 1266. Moreover, because student loan collection claims are barred at the date of the debtor's death or disability, there is no danger of condemning a debtor's heirs "for his forefathers' misdeeds." *Id.*, at 273, 105 S.Ct. at 1272.

Nor can one reasonably argue that the effect of removing equitable defenses "will upset long-settled expectations." *Id.*, at 272, 105 S.Ct. at 1271. Indeed, it is reasonable to infer that a purpose of the amendment eliminating the statute of limitations is to ensure that all borrowers should expect to repay their loans.

For all these reasons, the Court finds that laches cannot be applied to contract actions brought to recover student loans that are subject to 20 U.S.C. § 1091a(a).

**D. Even if laches could otherwise apply as a defense to a contract action subject to 20 U.S.C. § 1091a(a), does sovereign immunity bar its application?**

█ Even if laches were otherwise available as a defense to a student loan contract, the government argues that laches cannot be asserted against the United States on the grounds of sovereign immunity. *Costello v. United States*, 365 U.S. 265, 281, 81 S.Ct. 534, 542, 5 L.Ed.2d 551 (1961); *United States v. Summerlin*, 310 U.S. 414, 416, 60 S.Ct. 1019, 1020, 84 L.Ed. 1283 (1940); *United States v. Weintraub*, 613 F.2d 612, 619 (6th Cir.1979), *cert. denied*, 447 U.S. 905, 100 S.Ct. 2987, 64 L.Ed.2d 854 (1980).[3] While this rule originated with the notion of royal privilege, twentieth century courts attribute

---

**3.** *Nullum tempus occurrit regi* is the Latin. *Weintraub*, 613 F.2d at 618.

it to the policy of preserving public rights and property against the negligence of public officers. *Guaranty Trust Co. v. United States,* 304 U.S. 126, 132, 58 S.Ct. 785, 788, 82 L.Ed. 1224 (1938); *S.E.R., Jobs For Progress, Inc. v. United States,* 759 F.2d 1, 7 (1985). The Ninth Circuit recently applied the *Summerlin* rule to bar the defense of laches in a student loan collection case. *United States v. Menatos,* 925 F.2d 333, 335 (9th Cir.1991).

The Federal Circuit has suggested that the *Summerlin* rule is no longer valid. *S.E.R. Jobs For Progress Inc. v. United States,* 759 F.2d 1, 8–9 (Fed.Cir.1985). *S.E.R.* concerned an effort by the United States to obtain overpayment from a government contractor. Under the terms of the contract, the United States Department of Labor prepaid the contractor in 1972–73 for manpower training services, with the understanding that the contractor would have to pay "for recoupment by the Government of any overpayment or otherwise disallowed costs found on audit." *S.E.R.,* 759 F.2d at 2. A "final audit report" was issued in 1975, resulting in a repayment of $7,060.13 by S.E.R. to the government. With no intervening notice, the Department of Labor informed the contractor on July 9, 1981 that the company owed $688,412 in disallowed costs.

The contractor claimed that the government had waited too long to assess the claim, and that the delay prejudiced it because the company had destroyed records in good faith. After first finding the federal statute of limitations inapplicable,[4] the Federal Circuit agreed that the contractor could argue, on remand, that the government's efforts to obtain a refund of its money was barred by laches. 759 F.2d at 8–9. In dictum, the court stated "laches cannot ordinarily be invoked where a statute of limitations is normally available to preclude the recovery on stale claims, unless the offended party has been unmistakenly prejudiced by the delay in the assertion of the claim." *Id.* at 9.

This opinion opens the door to laches in a legal action by the United States. At least

two federal district courts have relied upon *S.E.R.* to consider the availability of laches in a student loan debt collection case. *United States v. Rhodes,* 788 F.Supp. 339 (E.D.Mich. 1992) (applying laches to bar government collection of student loan); *United States v. Zue,* 704 F.Supp. 535, 537 (1988) (denying application of laches to a student loan debt collection based on a factual analysis that conditions for laches had not occurred).

This Court finds the situation in *S.E.R.* distinguishable from the case before it. In *S.E.R.,* the government was acting, in effect, to recoup funds. Recoupment is an equitable device, and, if sovereign immunity is no barrier, it appears reasonable to hold the government subject to laches on an equitable claim. That precedent provides no basis for subjecting the government to laches on a strictly legal claim, however.

In addition, neither the Supreme Court nor this Circuit has indicated that *Summerlin* or its progeny is no longer good law, *United States v. Weintraub,* 613 F.2d 612, 618–19 (6th Cir.1979), *cert. denied,* 447 U.S. 905, 100 S.Ct. 2987, 64 L.Ed.2d 854 (1980) ("This rule is of such long standing that we do not believe the Supreme Court would carve out an exception without expressly saying so."); *See United States v. Republic Insurance Co.,* 775 F.2d 156, 159 (6th Cir.1985) (discussing the *Summerlin* line of cases), and the Court finds that this line of cases conflicts with *S.E.R.*'s language allowing laches to lie against the government.

Therefore, sovereign immunity prohibits parties from arguing that government delay gives rise to laches that bars a claim brought by the United States on a student loan contract. *Summerlin,* 310 U.S. at 416, 60 S.Ct. at 1020.

**E. Is there an exception to the Sovereign Immunity Rule when the Government is an assignee to a contract?**

 Even if laches is normally not available against the government, it arguably

---

4. 28 U.S.C. § 2415 (1988). The court found this provision unavailable because it applies to "every action for *money damages* brought by the United States or an officer thereof. . . ." § 2415(a) (emphasis added). The court found that the case

before it was not an action for money damages, but rather "an administrative appeal by a contractor." *S.E.R.,* 759 F.2d at 5. The court never considered applying an analogous state statute of limitations.

should be available where the contract is assigned from a private party. An assignee normally is subject to the defenses of an assignor, including the assignee of a creditor. *Restatement (Second) of Contracts*, § 336(1).

In *United States v. Rhodes*, 788 F.Supp. 339 (E.D.Mich.1992), Judge Gadola denied the government's claim on a seventeen year old student loan made by an institution no longer in existence on a defense of laches. In his decision, Judge Gadola relied upon *United States v. Republic Insurance Co.*, 775 F.2d 156, 159 (6th Cir.1985), which he cited for the proposition that "the government must take as part of its assignment all defenses available against its predecessor assignors. *Republic Insurance*, 775 F.2d at 159."

With all due respect to Judge Gadola, who faced compelling facts with which to find laches,[5] this Court does not think *Republic Insurance* stands for the proposition cited, but the Court agrees with Judge Gadola that *Republic Insurance* provides guidance on the question. In *Republic Insurance*, the government sued as subrogee to recover on a hazard insurance policy bought by a veteran for a Tennessee home. The Veterans Administration (VA) obtained the house in November, 1979, the same month that the house sustained $17,000 in fire damage. The VA submitted two separate claims for recovery on the insurance policy to Republic, each of which were denied.

The United States filed the case twenty months after the second denial. The insurance policy contained a one-year time limitation for filing suit. The United States, suing under 28 U.S.C. § 1345, claimed that the six year statute of limitations provided at 28 U.S.C. § 2415(a) controlled the case. The district court held that the insurance contract's limitation applied and dismissed the case.

On review, the Sixth Circuit considered two lines of authority. One line held that the United States is bound by the limitation of action created by a contract to which the government is a party, *Republic Ins.*, 775 F.2d at 158–59 (citing cases); the other line held that the United States is not bound by state statutes of limitation or subject to the defense of laches in enforcing its rights. *Republic Ins.*, 775 F.2d at 159 (citing cases).

The court held "neither of the above lines of authority are controlling in the instant case. The limitation period at issue was not included in a contract to which the government was a party nor was it imposed by another sovereign. Rather, the issue now before the court is whether the government, after acquiring a contractual claim through subrogation, can enforce rights under the contract, while at the same time avoid conditions *imposed by the same writing.*" *Id.* (emphasis added).

The Sixth Circuit went on to find that no federal rule governed the matter. The court then considered whether there was a federal interest in creating a rule and, if so, whether this federal interest should be balanced against the state interest in applying its law. It found "no significant threat to federal interests, and in view of the federal as well as state interests in preserving the integrity of contracts, we see no reason to fashion a federal rule and, instead turn to state law." 775 F.2d at 160. Therefore, the court relied on Tennessee law to find that the contract clause governed and the claim was barred. *Id.* at 160.

Thus, *Republic Insurance*'s only holding is that a federal court should apply state law to determine whether contract conditions apply against the United States when the United States sues on a contract that it has obtained through subrogation in which there is no federal interest.

This Court finds that a federal interest exists in extending the *Summerlin* rule to student loan contracts that are subject to 20 U.S.C. § 1091a. *Republic Insurance* found a federal interest in enforcing contracts, 775 F.2d at 160. To allow an equitable defense to interfere with the contractual relationship between the debtor and the university would undermine that federal interest.

---

**5.** The student in that case claimed to have paid the loan off completely, but the defunct university had maintained the only record of the payment. *Rhodes*, 788 F.Supp. at 342–43.

Furthermore, for the reasons discussed *supra*, this Court finds that Congress has established a federal interest in the enforcement of student loan contracts by passage of the Higher Education Technical Amendments of 1991. Section 1091a(a)(2) expressly allows "action initiated or taken by—(A) an institution that receives funds under this subchapter...." notwithstanding any statute of limitations. This language indicates that Congress was just as concerned with the ability of universities to collect as it was with the federal government's ability to collect. That concern would be undermined by allowing laches to serve as a defense when a university delays its efforts to recover under the contract.

## II. Application of Laches

 Even if this Court were reversed as to the above determinations of law, and laches were available as a defense, it would not be applicable in this case. Laches requires (1) lack of diligence by the party against whom the defense is asserted, and (2) prejudice to the party asserting the defense. *Costello*, 365 U.S. at 282, 81 S.Ct. at 543.

### A. Diligence
#### 1. Lack of Diligence by the Government

 As to the diligence issue, the defendant admits that the government sent her four letters since 1985 in an effort to collect the debt. While defendant chooses to characterize the government's efforts at collection prior to the filing of suit as "meager," Brief in Support of Motion for Summary Judgment at 2, the Court does not find that these efforts constitute a lack of diligence.

 Furthermore, because the government filed suit within seven years after it received assignment of the debt, when the repealed statute of limitations had been six years, the government acted in a sufficiently timely manner to bar laches against it.

#### 2. Lack of Diligence By the University

 The evidence before the Court of the university's lack of diligence in attempting to collect on the loans is the defendant's affidavit that the university did not contact her for repayment of the loans. Affidavit of Patricia

A. Robbins ¶ 12. The government presented no evidence to the contrary of specific acts performed by the university, such as the sending of a collection letter. The government did submit, however, a statement signed by a university official, M.E. Witbeck, on the form assigning defendant's loan collection to the Department of Education. That form contains the statement, "This loan is now in default despite completion of due diligence on the part of the institution."

The Court finds that the present record is insufficient for a ruling under Fed.R.Civ.P. 56 as to whether the university exercised due diligence. A trial would not be required, on a possible future remand, however, because the second condition of laches is clearly not present.

### B. Undue Prejudice

 Defendant cannot show that she suffered prejudice. Assuming *arguendo*, that defendant is correct, and that the university committed a tortious act of discrimination against her, that act would not serve as a defense to the debt, nor would it constitute a compulsory counterclaim under Fed.R.Civ.P. 13(a) either. *See United States v. Olavarrieta,* 812 F.2d 640, 643 (11th Cir.1987), *cert. denied,* 484 U.S. 851, 108 S.Ct. 152, 98 L.Ed.2d 107.

In *Olavarrieta*, the court denied a student loan debtor the right to file a third party complaint against the university for breach of contract or fraud on account of the university's failure to award the debtor a J.D. degree as promised. The court found the debtor's claim against the university to be a "separate and independent action from the government's action against him." *Id.* Therefore, for the same reasons as in that case, the court finds no prejudice to defendant resulting from the delay in filing suit.

Since laches does not apply, the debt plus interest plus collection costs must be paid.

Judgment for Plaintiff in the amount of $986.20.

SO ORDERED.