**UNITED STATES of America, Plaintiff,**

v.

**James E. SMITH aka James Edwin Smith, Defendant.**

**Civ. No. 93–00943 DAE.**

United States District Court, D. Hawai'i.

Sept. 2, 1994.

Michael Chun, Elliot Enoki, U.S. Attorneys Office, Honolulu, HI, for plaintiff.

James E. Smith, pro se.

*ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT, DENYING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT, AND DENYING PLAINTIFF'S MOTION TO COLLECT SURCHARGE*

DAVID ALAN EZRA, District Judge.

The court heard the cross motions on August 29, 1994. Defendant appeared on his own behalf; Michael Chun, Esq., appeared on behalf of plaintiff. After reviewing the

motions and the supporting and opposing memoranda, the court GRANTS the plaintiff's Motion for Summary Judgment and DENIES the defendant's Motion for Summary Judgment. However, the court DENIES the plaintiff's motion to collect a ten percent surcharge.

## BACKGROUND

This case involves the federal government's enforcement, pursuant to the Federal Debt Collection Procedures Act of 1990, of a student loan on which the defendant defaulted more than twenty years ago. On or about September 15, 1966, Defendant James Smith ("Smith" or "defendant") executed and delivered to the University of Chicago a promissory note ("Note"). He received in return the following sums on the following dates: $850.00 (September 15, 1966); $800.00 (December 8, 1966); $850.00 (March 7, 1967); $850.00 (October 3, 1967); $195.00 (March 7, 1968); $1,045.00 (March 21, 1968). His loans totalled, at a three percent annual interest rate, $4,590.00. These loans were made under the United States Department of Education loan guaranty program authorized under Title IV–D of the Higher Education Act of 1965, as amended, 20 U.S.C. §§ 1087aa et seq. and 34 C.F.R. Pt. 674.

After making payments in 1969, 1970, 1971, and 1972, Defendant defaulted on these loans.[1] The remaining unpaid balance on the loans totalled $3,672.00; the unpaid interest at the time of default was $853.74. The United States paid the University of Chicago for the balance in 1979, thereafter acquiring all rights from the University to collect on the Note from defendant. The current unpaid balance on the loan remains $3,672.00; the interest owed as of the date of this hearing is $2,538.65. Administrative collection costs total $87.00. According to the United States, the total amount owed is $6,297.65. The United States has moved for summary judgment to collect this amount. The United States also alleges that Smith is liable for a ten percent surcharge on the debt, pursuant to 28 U.S.C. § 3011. Defendant has cross-moved for summary judgment, claiming that the United States is barred by the statute of limitations and the doctrine of laches from collecting this debt.

## STANDARD OF REVIEW

Rule 56(c) provides that summary judgment shall be entered when:

> [T]he pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law.

Fed.R.Civ.P. 56(c). The moving party has the initial burden of demonstrating for the court that there is no genuine issue of material fact. *Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 106 S.Ct. 2548, 2552–53, 91 L.Ed.2d 265 (1986) (*citing Adickes v. S.H. Kress & Co.,* 398 U.S. 144, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970)). However, the moving party need not produce evidence negating the existence of an element for which the opposing party will bear the burden of proof at trial. *Id.* at 322, 106 S.Ct. at 2552.

Once the movant has met its burden, the opposing party has the affirmative burden of coming forward with specific facts evidencing a need for trial. Fed.R.Civ.P. 56(e). The opposing party cannot stand on its pleadings, nor simply assert that it will be able to discredit the movant's evidence at trial. *See T.W. Elec. Serv., Inc. v. Pacific Elec. Contractors Ass'n,* 809 F.2d 626, 630 (9th Cir. 1987); Fed.R.Civ.P. 56(e). There is no genuine issue of fact "where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party." *Matsushita Electric Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586–87, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986) (citation omitted).

At the summary judgment stage, this court may not make credibility determinations or weigh conflicting evidence. *Musick v. Burke,* 913 F.2d 1390, 1394 (9th Cir.1990). The standard for determining a motion for summary judgment is the same standard used to determine a motion for directed verdict: does the evidence present a sufficient disagreement to require submission to a jury or is it so one-sided that one party must

---

**1.** Defendant had developed bipolar personality syndrome (i.e., he was a manic depressive).

prevail as a matter of law. *Id.* (citation omitted).

## DISCUSSION

■ Smith contends that the government's action is barred by the statute of limitations. The United States asserts that the action is not time-barred because the Higher Education Technical Amendments of 1991 ("HETA"), codified at 20 U.S.C. § 1091a(a), eliminated all statutes of limitation on actions to recover on defaulted student loans and thereby revived this action against Smith.

Prior to HETA, the statute of limitations period for suits to recover on defaulted student loans was six years, commencing on the date the loan was assigned to the Department of Education. *See* Higher Education Act of 1965 ("HEA"), as amended by the Consolidated Omnibus Budget Reconciliation Act of 1985 ("COBRA"), codified at 20 U.S.C. § 1091a(a)(4)(B) & (C); *U.S. v. Menatos*, 925 F.2d 333, 335 (9th Cir.1991). When Congress enacted HETA, it meant not only to replace but also to nullify this limitations period:

> (1) It is the purpose of this subsection to ensure that obligations to repay loans and grant overpayments are enforced *without regard to any Federal or State statutory, regulatory, or administrative limitation on the period within which debts may be enforced.*
>
> (2) Notwithstanding any other provision of statute, regulation, or administrative limitation, no limitations shall terminate the period within which suit may be filed, a judgment may be enforced, or an offset, garnishment, or other action initiated or taken.

20 U.S.C. § 1091a(a)(1) & (2) (emphasis added).

The Ninth Circuit addressed the issue herein raised by Smith earlier this year. *U.S. v. Phillips*, 20 F.3d 1005 (9th Cir.1994). In *Phillips,* the Ninth Circuit unequivocally interpreted the effect of HETA on previously recognized limitations periods:

> Congress provided that actions to collect on defaulted student loans were no longer subject to any statute of limitations. *See*

20 U.S.C. § 1091a(a) (footnote omitted). Moreover, Congress made HETA effective as if it were enacted under COBRA. *See* HETA § 3(c), Pub.L. No. 102–26, 105 Stat. 123, 125. (footnote omitted). By doing so, Congress not only eliminated COBRA's six-year statute of limitations period, but also revived all actions which otherwise would have been time-barred. *See* 20 U.S.C. § 1091a(a); *see also U.S. v. Hodges,* 999 F.2d 341, 341–42 (8th Cir.1993) (government could bring action to recover on defaulted student loan even though loan was defaulted in 1969 and loan was assigned to government in 1983 and would have been time-barred under the six-year limitations period); *U.S. v. Glockson,* 998 F.2d 896, 897 (11th Cir.1993) (same; "Congress intended the HETA amendments to apply retroactively to all student loan collection actions"); *U.S. v. Mastrovito,* 830 F.Supp. 1281, 1282–84 (D.Ariz.1993) (same); *U.S. v. Davis,* 801 F.Supp. 581, 583–84 (M.D.Ala.1992) (same); *U.S. v. Wall,* 794 F.Supp. 350, 351–52 (D.Or.1992) (same).

*Id.* at 1007.

The subsection of HETA which effectively incorporated the HETA amendments into COBRA, section 3(c), originally read:

> The amendments made by this section shall be effective as if enacted by [COBRA] and shall apply to any actions pending on or after the date of enactment of [HETA] that are brought before November 15, 1992.

However, this subsection was amended in 1992 to eliminate the November 15, 1992 "sunset date." Pub.L. No. 102–325, § 1551, 106 Stat. 838 (1992). Hence, the HETA amendments apply to all debt collections on defaulted student loans, whenever brought, thereby reviving otherwise time-barred actions.

■ Under these authorities, there is no doubt that a statute of limitations cannot bar the United States from bringing this action against defendant. "The Amendments of 1991 [and 1992] are clear and straightforward, providing that no limitation shall terminate the period within which an action may be filed." *Mastrovito,* 830 F.Supp. at 1283.

Defendant's assertion that the United States' claim should be barred by the six-year statute of limitations applicable when Smith both incurred the debt and first defaulted on his loan payments simply has no merit in light of the unambiguous statutory language and expressed Congressional intent found in the statute. "[C]ourts must presume that a legislature says in a statute what it means and means in a statute what it says there. When the words of a statute are unambiguous, then, this first canon is also the last: 'judicial inquiry is complete.'" *Connecticut Nat'l Bank v. Germain,* 503 U.S. 249, ——, 112 S.Ct. 1146, 1149, 117 L.Ed.2d 391 (1992) (*quoting Rubin v. U.S.,* 449 U.S. 424, 430, 101 S.Ct. 698, 701, 66 L.Ed.2d 633 (1981)). Furthermore, the Supreme Court has held that the repeal of a statute of limitations on personal debts does not deprive a debtor of property in violation of the Fourteenth Amendment. *Campbell v. Holt,* 115 U.S. 620, 6 S.Ct. 209, 29 L.Ed. 483 (1885) (cited in *Hodges,* 999 F.2d at 342).[2]

Finally, the defendant argues that the University of Chicago and the United States have not met the due diligence requirements imposed by law for debt collectors.[3] 20 U.S.C. § 1080(a) (1990) provides, in relevant part:

> [The initial lender and beneficiary of the government insurance] shall be required to meet the standards of due diligence in the collection of the loan and shall be required to submit proof that reasonable attempts were made to locate the borrower (when the location of the borrower is unknown) and proof that contact was made with the borrower (when the location is known). The Secretary shall make the determination required to carry out the provisions of this section not later than 90 days after the notification by the insurance beneficiary and shall make payment in full on the amount of the beneficiary's loss pending completion of the due diligence investigation.

20 U.S.C. § 1080(d) (1990) elaborates on the lender's due diligence mandate:

> Nothing in this section or in this part shall be construed to excuse the holder of a federally insured loan from exercising reasonable care and diligence in the making and collection of loans under the provisions of this part. If the Secretary, after a reasonable notice and opportunity for hearing to an eligible lender, finds that it has substantially failed to exercise such care and diligence or to make the reports and statements required under section 1078(a)(4) of this title and section 1079(a)(3) of this title, or to pay the required Federal loan insurance premiums, the Secretary shall disqualify that lender for further Federal insurance on loans granted pursuant to this part until the Secretary is satisfied that its failure has ceased and finds that there is reasonable assurance that the lender will in the future exercise necessary care and diligence or comply with such requirements, as the case may be.

Lastly, 20 U.S.C. § 1085(f) (1994 Supp.) defines due diligence as follows:

> The term "due diligence" requires the utilization by a lender, in the servicing and collection of loans insured under this part, of servicing and collection practices at least as extensive and forceful as those generally practiced by financial institutions for the collection of consumer loans.

These statutes require the University of Chicago to have exercised due diligence in pursuing its claims against Smith before tendering its claim to the United States. Federal courts have required the lender to send letters, make telephone calls, and attempt to

---

**2.** The Eighth Circuit in *Hodges* speculated that a defendant might succeed on a Fourteenth Amendment claim if "the abrogation of the statute of limitations had worked 'special hardships or oppressive effects' in [his] case." 999 F.2d at 342 (*citing Chase Securities Corp. v. Donaldson,* 325 U.S. 304, 65 S.Ct. 1137, 89 L.Ed. 1628 (1944)). Even if this court interpreted this statement as creating an exception to the statute, such an exception would not apply in this case.

Smith does not claim or demonstrate that enforcement of the debt will work a special hardship or oppressive effect on his life; he claims only that enforcement after such a long time is inherently unfair.

**3.** The court notes that the due diligence provision cited by Smith has been modified and revised by later statutes.

personally contact borrowers once the loan becomes delinquent. *See, e.g., U.S. v. Harmas,* 974 F.2d 1262, 1264 (11th Cir.1992) (*citing* 34 C.F.R. § 682.511(b)(1) (1986)); *Canterbury Career Sch., Inc. v. Riley,* 833 F.Supp. 1097 (D.N.J.1993) (*citing* 34 C.F.R. § 682.411). The evidence before the court indicates that Smith defaulted in 1972 and that the University of Chicago was paid by the United States in 1979. The United States paid the Note after receiving from the University of Chicago an "Assignment of Defaulted Note" form for plaintiff, indicating that $4,410.99 was due and that due diligence had been performed.[4] Smith apparently contends, without submitting evidence, that the University did not in fact diligently try to collect on the Note; however, the statement on the form belies this claim.

■ Moreover, the court notes that Smith does not have standing, under the above-quoted statutes, to challenge the University's collection practices. The due diligence statutes exist for the government's benefit, to ensure that the lender seeks recovery from the borrower before the lender makes a claim against the insurance. If the lender fails to do so, the United States "shall disqualify that lender for further Federal insurance" on student loans. 20 U.S.C. § 1080(d). The statute does not give the borrower the right to void his debt simply because he is now dissatisfied with the lender's collection practices.

■ Any "due diligence" argument which Smith makes against the government is essentially an argument that the equitable doctrine of laches should bar the government's claim. The Ninth Circuit has previously found this argument in a student loan collection case meritless. *U.S. v. Menatos,* 925 F.2d 333, 335 (9th Cir.1991). Citing *U.S. v. Summerlin,* 310 U.S. 414, 416, 60 S.Ct. 1019, 1020, 84 L.Ed. 1283 (1940), the Ninth Circuit held that the United States "is not subject to the defense of laches when enforcing its rights." *Id.* More importantly, though, this court believes that if it were to apply the doctrine of laches, it would undermine Congress' intent to remove all time-based barriers to recovery of student loans. 20 U.S.C. § 1091a(a)(1). "This language is broad and, when read with the understanding that the previous limitations period was six years, suggests that Congress fully intended to open the courts to recovery on older debt claims." *U.S. v. Robbins,* 819 F.Supp. 672, 676 (E.D.Mich.1993); *see also U.S. v. Davis,* 817 F.Supp. 926 (M.D.Ala. 1993) (Congress' retroactive elimination of all statutes of limitations for actions to recover defaulted student loans appears to indicate that Congress wanted to erase obstacles that government might encounter in collecting defaulted loans).[5]

■ Finally, the court notes that Smith has failed to demonstrate how the govern-

---

**4.** This form is attached to the government's Motion for Summary Judgment.

**5.** The *Robbins* court conducted an exhaustive review of the laws governing the applicability of laches to federal claims. After noting that § 1091a(a)(1) specifically mentioned only three types of barriers (statutes, regulations, and limitations) and did not mention equitable defenses, the court concluded that, because recovery on a contract is a legal claim, Congress may have thought it unnecessary to mention equitable defenses. 819 F.Supp. at 676. Next, the *Robbins* court considered that the regulations render student loans uncollectible after the student's death or disability, thereby placing a finite limit on the time in which the government can collect and absolving the debtor's heirs of any responsibility. *Id.* (*citing* 34 C.F.R. § 674.58 (1992)). The court summarized its findings as follows:

> The Court finds that while there is evidence on both sides, the best reading of the statute is one that comports with the direction of the

amendment, to eliminate barriers to recovery. To read the statute in such a manner ensures that the courts maintain the greatest respect for Congressional intent and separation of powers. Moreover, because student loan collection claims are barred at the date of debtor's death or disability, there is no danger of condemning a debtor's heirs for his forefather's misdeeds.

> Nor can one reasonably argue that the effect of removing equitable defenses will upset long-settled expectations. Indeed, it is reasonable to infer that a purpose of the amendment eliminating the statute of limitations is to ensure that all borrowers should expect to repay their loans.

> For all these reasons, the Court finds that laches cannot be applied to contract actions brought to recover student loans that are subject to 20 U.S.C. § 1091a(a).

*Id.* (internal citations and quotations omitted).

ment's delay in filing suit has unfairly prejudiced him. *See Wauchope v. U.S. Dept. of State*, 985 F.2d 1407 (9th Cir.1993) (to successfully establish laches, party must show there was an inexcusable delay which has caused him prejudice). Smith himself admits that for many years he was plagued by severe mental illness and was incapable of taking care of himself. He is currently on medication and appears to be in command of his life. While the court appreciates the hardships which Smith has confronted since he entered into the loan agreement, unfortunately these circumstances do not absolve him of his responsibility to repay his debt. Furthermore, the court cannot see how prejudice resulted from the government's decision to wait to pursue the debt collection until Smith was actually capable of making payments.

Because the facts are undisputed as to the amounts owed by Smith to the United States, the court finds, as a matter of law, that the United States is entitled to collect on the full amount of the debt, plus interest and administrative costs through the date of the hearing.[6] The court GRANTS the plaintiff's Motion for Summary Judgment and DENIES the defendant's Motion for Summary Judgment as to these amounts.

■ However, the government also claims, without providing support therefor, that it is entitled to a ten percent surcharge under 28 U.S.C. § 3011. That statute provides, in pertinent part:

> (a) **Surcharge authorized.**—In an action or proceeding under subchapter B or C [of the Federal Debt Collection Procedures Act of 1990], and subject to subsection (b),[7] the United States is entitled to recover a surcharge of 10 percent of the amount of the debt in connection with the recovery of the debt, to cover the cost of processing and handling the litigation and enforcement under this chapter of the claim for such debt.

28 U.S.C. § 3011 (1994 Supp.).

Subchapter B concerns prejudgment remedies such as attachment, receivership, sequestration, and garnishment;[8] subchapter C concerns postjudgment remedies such as judgment liens, writs of execution, payment orders, and garnishment.[9] In contrast, subchapter A sets forth the definitions and general provisions to be used by the government when recovering judgment on the debt itself. 28 U.S.C. §§ 3001 et seq.

This statute, although found within subchapter A, authorizes the award of a ten percent surcharge only in actions or proceedings brought under subchapter B or C of Chapter 176. *U.S. v. Mauldin*, 805 F.Supp. 35, 36 (N.D.Ala.1992). Any other reading would allow the government to collect the surcharge multiple times—i.e., when it asks the court to secure the funds which may be necessary to satisfy an anticipated judgment (subchapter B), when it sues to recover the judgment itself (subchapter A), and when it sues to enforce the judgment it has obtained (subchapter C). Such a construction is nonsensical. *See Mauldin*, 805 F.Supp. at 36 n. 5.

In this case the government seeks to recover the judgment on the debt itself, pursuant to subchapter A. This proceeding does not involve any pre- or post-judgment remedies as described in subchapters B and C. Accordingly, the government is not entitled

---

**6.** Smith submitted at the hearing his Exhibits in Support of Summary Judgment filed June 3, 1994. In this attachment, he argues for the first time that the government's claims should be barred "under the disability provisions of 20 U.S.C. § 1085(g)." The court notes that the statute cited by defendant has been repealed. Pub.L. 102–325, 106 Stat. 550 (July 23, 1992). However, 20 U.S.C. § 1087(a) (1994 Supp.) requires the Secretary to discharge a borrower's liability in the event the borrower dies or becomes permanently or totally disabled. That statute is inapplicable here, as Smith has neither died nor become permanently or totally disabled from his mental illness.

**7.** Subsection (b) precludes recovery of the surcharge if the United States receives an attorney's fee in connection with the enforcement of the claim, or if the law on which the action is based provides any other amount to cover such costs. Neither exception applies here.

**8.** *See* 28 U.S.C. §§ 3101 et seq.

**9.** *See* 28 U.S.C. §§ 3201 et seq.

to the ten percent surcharge.[10]

### CONCLUSION

For the reasons stated above, the court GRANTS the plaintiff's Motion for Summary Judgment and DENIES the defendant's Motion for Summary Judgment. The defendant is hereby ordered to pay the United States $6,297.65. Because this proceeding does not arise under either subchapter B or subchapter C of Chapter 176 of the Federal Debt Collection Procedures Act of 1990, the government is not entitled to the ten percent surcharge described in 28 U.S.C. § 3011.

IT IS SO ORDERED.

---

**10.** The court notes that at least one district court in the Ninth Circuit has awarded the government this surcharge in a debt collection action, although it did so without discussing whether 28 U.S.C. § 3011(a) was appropriately applied to the action. *Mastrovito,* 830 F.Supp. at 1284.