IN THE COURT OF APPEALS OF TENNESSEE
AT NASHVILLE
Assigned on Briefs April 16, 1999

# VANDERBILT UNIVERSITY v. PAMELA HENDERSON

**Appeal from the Circuit Court for Davidson County**
**No. 97C-3945     Thomas W. Brothers, Judge**

---

**No. M1998-00929-COA-R3-CV - Filed October 12, 2001**

---

This appeal involves a dispute between Vanderbilt University and one of its graduates arising out of two student loans. After the former student stopped repaying the loans, Vanderbilt University filed suit in the Davidson County General Sessions Court seeking to recover the principal and interest due, collection costs, and attorney's fees. The general sessions court awarded Vanderbilt University a $9,056.43 judgment. The former student perfected a de novo appeal to the Circuit Court for Davidson County. Following a bench trial, the trial court awarded Vanderbilt University a $5,051.56 judgment and established an installment payment plan for the judgment. The former student asserts on this appeal that Vanderbilt University was not entitled to a judgment against her because of its failure to comply with the Fair Debt Collection Practices Act and the requirements of the federal student loan program and because she has fully repaid her loans. We have concluded that the record supports the trial court's decision and, therefore, affirm the judgment.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed**

WILLIAM C. KOCH, JR., J., delivered the opinion of the court, in which BEN H. CANTRELL, P.J., M.S., and WILLIAM B. CAIN, J., joined.

Pamela Henderson, Nashville, Tennessee, Pro Se.

Kevin S. Key, Nashville, Tennessee, for the appellee, Vanderbilt University.

**OPINION**

**I.**

Pamela Henderson enrolled at Peabody College during the mid-1970s. To help finance her education, she obtained a $2,500 loan under the National Direct Student Loan program ("NDSL program") and, in September 1974, executed a $2,500 promissory note payable to Peabody College. In the fall of 1975, Ms. Henderson transferred to Tennessee State University where she remained until the end of the fall semester in 1977. After a two-year hiatus, Ms. Henderson re-enrolled at Peabody College in the fall of 1979. By that time, Peabody College had become part of Vanderbilt

University. In August 1979, Ms. Henderson obtained a second $2,500 NDSL loan and executed a promissory note payable to Vanderbilt University.

Apparently Ms. Henderson did not continue to pursue her studies on a full-time basis. She did not graduate from Peabody College until December 1990. She began repaying her two student loans in October 1992. Ms. Henderson failed to make her August 1993 installment payment but resumed repaying the loans the following month. She again stopped making her payments in August 1996 but picked back up again in April 1997. Finally, in October 1997, Ms. Henderson stopped repaying her student loans altogether because she had decided that she had repaid these loans "in full over the years."

Vanderbilt University attempted to resolve the matter informally. When Ms. Henderson rebuffed its overtures, Vanderbilt University filed suit against Ms. Henderson in the Davidson County General Sessions Court seeking the combined balance due on the two NDSL notes, accrued interest, collection costs, and attorney's fees. On November 9, 1993, after additional efforts to resolve the dispute failed, Vanderbilt University obtained a $9,056.43 default judgment. Ms. Henderson appealed to the Circuit Court for Davidson County where, on June 22, 1998, Vanderbilt received a $5,051.56 judgment. In accordance with Tenn. Code Ann. § 26-2-216 (2000), the trial court directed Ms. Henderson to pay Vanderbilt University $100 per month until the judgment was paid in full. Ms. Henderson, who has represented herself throughout these proceedings, has appealed.

## II.
### THE STANDARD OF REVIEW

We turn first to the proper standards of review for the issues presented in this appeal. Because this is an appeal from a decision made by the trial court itself following a bench trial, the now familiar standard in Tenn. R. App. P. 13(d) governs our review. This rule contains different standards for reviewing a trial court's decisions regarding factual questions and legal questions.

With regard to a trial court's findings of fact, we will review the record de novo and will presume that the findings of fact are correct "unless the preponderance of the evidence is otherwise." We will also give great weight to a trial court's factual findings that rest on determinations of credibility. *In re Estate of Walton*, 950 S.W.2d 956, 959 (Tenn. 1997); *B & G Constr., Inc. v. Polk*, 37 S.W.3d 462, 465 (Tenn. Ct. App. 2000). However, if the trial judge has not made a specific finding of fact on a particular matter, we review the record to determine where the preponderance of the evidence lies without employing a presumption of correctness. *Ganzevoort v. Russell*, 949 S.W.2d 293, 296 (Tenn. 1997).

Tenn. R. App. P. 13(d)'s presumption of correctness requires appellate courts to defer to a trial court's findings of fact. *Fell v. Rambo*, 36 S.W.3d 837, 846 (Tenn. Ct. App. 2000); *Taylor v. Trans Aero Corp.*, 924 S.W.2d 109, 112 (Tenn. Ct. App. 1995). Because of the presumption, an appellate court is bound to leave a trial court's finding of fact undisturbed unless it determines that the aggregate weight of the evidence demonstrates that a finding of fact other than the one found by

the trial court is more probably true. *Estate of Haynes v. Braden*, 835 S.W.2d 19, 20 (Tenn. Ct. App. 1992) (holding that an appellate court is bound to respect a trial court's findings if it cannot determine that the evidence preponderates otherwise). Thus, for the evidence to preponderate against a trial court's finding of fact, it must support another finding of fact with greater convincing effect.

The presumption of correctness in Tenn. R. App. P. 13(d) applies only to findings of fact, not to conclusions of law. Accordingly, appellate courts review a trial court's resolution of legal issues without a presumption of correctness and reach their own independent conclusions regarding these issues. *Johnson v. Johnson*, 37 S.W.3d 892, 894 (Tenn. 2001); *Nutt v. Champion Int'l Corp.*, 980 S.W.2d 365, 367 (Tenn. 1998); *Hicks v. Cox*, 978 S.W.2d 544, 547 (Tenn. Ct. App. 1998)*; McCormick v. Aabakus, Inc.*, ___ S.W.3d ___, ___, 2000 WL 1473915, at *1 (Tenn. Sp. Workers Comp. Panel 2000).

## III.
### MS. HENDERSON'S FAIR DEBT COLLECTION PRACTICES ACT CLAIM

Ms. Henderson claims that Vanderbilt University was not entitled to a judgment against her because it violated the federal Fair Debt Collection Practices Act. While this Act prohibits certain debt collection practices and permits debtors to recover monetary damages for violations of its provisions, we have determined that Ms. Henderson has not effectively asserted a claim based on the Act in this proceeding.

No mention was made of the Act until Ms. Henderson's closing argument in the trial court. At that time, and again in her appellate briefs, Ms. Henderson has failed to explain with any specificity how Vanderbilt University violated the Act.[1] This court has appellate jurisdiction only. Tenn. Code Ann. § 16-4-108(a)(1) (1994). As a prudential matter, we will not address claims for relief that have not been properly presented to the trial court. *DeLaney v. Thompson*, 982 S.W.2d 857, 861 (Tenn. 1998); *Green v. Innovative Recovery Servs., Inc.*, 42 S.W.3d 917, 919 (Tenn. Ct. App. 2000). Because Ms. Henderson neither pleaded nor presented evidence at trial regarding Vanderbilt University's alleged violations of the Fair Debt Collection Practices Act, she cannot use her claims that Vanderbilt University violated the Act to obtain relief on appeal.

## IV.
### VANDERBILT UNIVERSITY'S COMPLIANCE WITH NDSL ADMINISTRATION
### AND COLLECTION REQUIREMENTS

Ms. Henderson also asserts that Vanderbilt University is not entitled to a judgment against her because it did not adhere to the federal procedures and requirements governing the NDSL

---

[1] For example, Ms. Henderson states in her reply brief, "The Appellant has expressed no interest here in litigating Vanderbilt or [its lawyer] for their failure to comply with the Fair Debt Collection Procedures . . .. The point is that Vanderbilt has not shown very much compliance of its mandated responsibilities . . .."

program.[2] These statutes and regulations require participating colleges and universities "to meet the standards of due diligence in the collection of the loans . . ..," 20 U.S.C.A. § 1080(a) (West 2000); 34 C.F.R. § 674.41(a) (2000) and provide that colleges and universities that do not meet these standards may be removed from the program. 20 U.S.C.A. § 1080(d), -(h)(1).

Ms. Henderson cannot use the statutes and regulations governing the administration of the NDSL program to defend against Vanderbilt University's collection efforts. These statutes and regulations exist for the federal government's benefit, not for the benefit of the students. *United States v. Smith*, 862 F. Supp. 257, 262 (D. Haw. 1994). They create no private right of action for the borrowers, *Morgan v. Markerdowne Corp.*, 976 F. Supp. 301, 319 (D.N.J. 1997); nor do they provide student borrowers with a basis to avoid repaying their debts. *United States v. Dwelley*, 59 F. Supp. 2d 115, 119 (D. Me. 1999); *United States v. Singer*, 943 F. Supp. 9, 12 (D.D.C. 1996), *aff'd in part, rev'd in part on other grounds*, 132 F.3d 1482 (D.C. Cir. 1997); *United States v. Smith*, 862 F. Supp. at 262.

In light of the decisions regarding "due diligence" arguments similar to those Ms. Henderson is asserting in this case, we have determined that she cannot defend against Vanderbilt University's collection claim based on the school's alleged failure comply with every applicable regulatory requirement regarding the conduct of NDSL lenders. Accordingly, the trial court did not err by concluding these claimed shortcomings did not provide Ms. Henderson with grounds to refuse to pay her NDSL loan.

## V.
### MS. HENDERSON'S DEFAULT

Ms. Henderson also asserts that the trial court erred by finding that she had defaulted on her NDSL loans because she had "rehabilitated" the two loans as permitted by federal regulation. Even though Ms. Henderson may have rehabilitated her loans following her August 1993 default, she failed to prove that she rehabilitated the loans following her defaults in August 1996 and October 1997.

Unlike most commercial promissory notes, the two promissory notes Ms. Henderson signed do not expressly define "default." They do, however, contain an acceleration provision stating that should the borrower fail "to meet a scheduled repayment of any of the installments due on [the] note, the entire unpaid indebtedness including interest . . . shall, at the option of the lending institution, become immediately due and payable." The definition of "default" not found in the note is supplied by 34 C.F.R. § 674.2(b) (2000) which defines a "default" as "[t]he failure of a borrower to make an installment payment when due or to comply with other terms of the promissory note or written repayment agreement."

---

[2]Specifically, Ms. Henderson asserts that Vanderbilt University did not provide her the "exit counseling" required by 34 C.F.R. § 674.42(b) (2000) and that the school's billing procedures did not comply with the information requirements in 34 C.F.R. § 674.43 (2000).

Vanderbilt University's business records establish that Ms. Henderson did not make her August 1993 installment payment. This omission was, beyond question, a default on both notes. Even though she has been unable to controvert Vanderbilt University's records, Ms. Henderson insists that Vanderbilt cannot base its collection efforts on this default because she rehabilitated her loans by thereafter making timely payments for twelve consecutive months.[3] Even if Ms. Henderson was entitled to have her loan rehabilitated following her August 1993 default, she defaulted again in August 1996 and again in October 1997. Her earlier rehabilitation cannot cure these later defaults. Accordingly, the record contains ample evidence to support the trial court's conclusion that Ms. Henderson had defaulted on both of her NDSL loans by non-payment.

## VI.
### THE CALCULATION OF THE BALANCE DUE ON MS. HENDERSON'S NOTES

Ms. Henderson's most substantive arguments involve the manner in which the trial court determined the balance due on her two student loans. She asserts that the trial court's conclusions that the outstanding principal on her two loans was $3,776.04 was incorrect for three reasons. First, she insists that Vanderbilt University improperly computed the interest on her loans. Second, she insists that Vanderbilt University misapplied the payments she made between October 1992 and October 1997. Third, she insists that she made more payments on these loans than the trial court gave her credit for. The evidence fails to support any of these arguments.

With regard to the computation of the interest on her loans, Ms. Henderson asserts that Vanderbilt University began charging her interest prematurely and commenced her repayment period too soon. She points out that the NDSL program requires that repayment be deferred and that interest not accrue while the borrower is at least a half-time student. She also points out that students are not required to begin repaying their loans until nine months after they cease to be at least half-time students. Unfortunately, Ms. Henderson has failed to demonstrate how Vanderbilt University's conduct was inconsistent with these provisions.

Ms. Henderson requested several deferments of her obligation to repay her loans on the ground that she was at least a half-time student. These deferments expired in June 1981. When Vanderbilt University received no further requests for deferment, it began charging Ms. Henderson interest on her loans in June 1981. Even though Ms. Henderson may have still been in school when Vanderbilt started charging interest on her first NDSL note, she never proved that she was going to school at least half time and, therefore, that she was eligible for a continuing deferment of interest. Without this evidence, her claim that Vanderbilt University computed the interest on her loans improperly must fail.

---

[3] 34 C.F.R. § 674.39(a)(2) (2000) permits an educational institution to consider a student's loan to be rehabilitated if the student resumes making timely monthly payments for twelve consecutive months after the default and if the borrow requests rehabilitation. When a student's request is approved, the school must "return the borrower to regular payment status." 34 C.F.R. § 674.39(b)(1). A student may rehabilitate a defaulted loan only once. 34 C.F.R. § 674.39(e).

Ms. Henderson also insists that Vanderbilt University misapplied her payments on her two student loans. While she does not explain precisely how Vanderbilt University misapplied her payments, Ms. Henderson asserts that she stopped paying on her two loans in October 1997 because she believed that she had paid her loans in full. On several occasions, she expressed surprise that the principal balance of her loans was not decreasing as fast as she thought it should have. However, the fact that Vanderbilt was not applying her payments exclusively to the principal of her loans is not evidence of wrongdoing. 34 C.F.R. § 674.33(a)(4) (2000) required Vanderbilt University to apply Ms. Henderson's installment payments first to its collection costs, second to accrued late charges, third to accrued interest, and finally to the remaining principal. Because Ms. Henderson failed to present any evidence that Vanderbilt University did not apply her payments in accordance with 34 C.F.R. § 674.33(a)(4), the trial court properly disregarded her claim that Vanderbilt had misapplied the payments she had made on her NDSL loans.

Finally, Ms. Henderson insists that the trial court should have given her credit for $7,590 in payments on her two notes rather than $5,415.06. The only evidence regarding Ms. Henderson's payments introduced at trial were the student loan records introduced by Vanderbilt University. Ms. Henderson did not offer cancelled checks or receipts to contradict Vanderbilt University's records. Accordingly, the trial court based its calculations on Vanderbilt University's records after expressly finding that Ms. Henderson's uncorroborated testimony regarding the payments on her loans was not credible. We decline to second-guess the trial court's credibility determination or to hold the trial court in error for basing its calculations on the only evidence in the record.[4]

## VII.
### THE JUDGMENT FOR VANDERBILT UNIVERSITY'S COLLECTION COSTS

Despite the provision in the promissory notes obligating her to pay Vanderbilt University "all attorney's fees and other costs and charges necessary for the collection of any amount not paid when due," Ms. Henderson argues that the trial court erred by awarding Vanderbilt University $1,200 in attorney's fees and collection costs. She insists that these costs are "far beyond the limit of what is permissible by the Higher Education Act provisions . . .." Ms. Henderson's reliance on the federal regulations governing NDSL loans is misplaced.

The applicable federal regulations authorize educational lenders such as Vanderbilt to sue defaulting student borrowers such as Ms. Henderson.[5] Lenders who do so "shall assess against and attempt to recover from the borrower all litigation costs, including attorney's fees, court costs, and

---

[4]On two occasions after filing this appeal, Ms. Henderson sought this court's permission to supplement the appellate record with copies of personal checks and other financial information that she had failed to introduce at trial. We denied her requests because these materials do not qualify as post-judgment facts under Tenn. R. App. P. 14 and because the scope of our factual review is limited to the contents of the appellate record brought before this court in conformance with Tenn. R. App. P. 24, 25, and 26. *Richmond v. Richmond*, 690 S.W.2d 534, 535 (Tenn. Ct. App. 1985). Notwithstanding our earlier denial of her motions, Ms. Henderson has appended the excluded evidentiary material to her brief. We have not considered these materials because they are not properly part of the appellate record.

[5]34 C.F.R. § 674.46(a)(2), (3) (2000).

-6-

other related costs, to the extent permitted under applicable law . . ..." 34 C.F.R. §§ 674.46(b)(1), 674.47(b). If the educational lender fails to recoup all of its collection costs from the defaulting student borrower, the educational lender may seek reimbursement of the unpaid costs from the federal government. However, the regulations cap the amount of reimbursement an educational lender may obtain from the federal government.[6]

The regulations upon which Ms. Henderson bases her argument that the judgment for Vanderbilt University's collection costs is too high do not apply to Vanderbilt University's suit against her. They come into play only if Vanderbilt undertakes to charge back any of her loan or its collection costs against the federal government. Accordingly, Ms. Henderson's argument that the federal regulations do not permit the collection costs awarded in this case is without merit.

## VIII.

We affirm the judgment and remand the case to the trial court for whatever further proceedings may be required. We tax the costs of this appeal to Pamela Henderson for which execution, if necessary, may issue.

_____
WILLIAM C. KOCH, JR., JUDGE

---

[6]34 C.F.R. § 674.47(e)(6)(i)-(iv).